CORA HUBBARD WILLIAMS AND GRETCHEN PACK ROSE, EXECUTRICES OF THE ESTATE OF JOHN W. HUBBARD, DECEASED, COMPLAINANTS-RESPONDENTS, v. MORRIS EVENSTEIN ET AL., DEFENDANTS-APPELLANTS.

Argued March 28, 1949—Decided April 11, 1949.

*Mr. Joseph B. Perskie* (*Mr. Joseph H. Blumberg,* attorney) argued the cause for the appellants.

*Mr. Eugene N. Harris* (*Messrs. Kirkman, Mulligan & Harris,* attorneys) argued the cause for the respondents.

The opinion of the court was delivered by

VANDERBILT, C. J.   The complainants brought a suit to foreclose a mortgage on a three-story hotel in Atlantic City with 35 rooms and three stores and a parking lot and certain chattels located in the hotel for a default by the defendants in failing to pay a quarterly installment of taxes within 30 days after August 1, 1947.   The bill of complaint was filed in Chancery on September 17, 1947, and on the next day a member of the firm of solicitors representing the complainants signed the subpœna and subpœna tickets and gave them to his secretary with instructions to mail them to the sheriff for service "after the forwarding of the *lis pendens* to the county clerk's office."   On September 19th the solicitor of the complainants dictated a letter to one of the defendants informing him that the foreclosure suit had been instituted, but the letter was not mailed until September 20th.   On receiving the letter on September 22d, a Monday, one of the defendants telephoned the solicitor of the complainants, told him the

taxes had been paid on September 19th and requested that the foreclosure proceedings be stayed until the return to town of the other defendant. Counsel thereupon inquired of his secretary and found that she had been so busy that she had not yet sent off the subpœna and tickets to the sheriff, whereupon he instructed her "not to send off [the subpœna and tickets] until she had further instructions from me." Thereafter negotiations were had looking towards a settlement, but eventually they fell through and service of the subpœna was acknowledged by the then solicitor for the defendants on November 15, 1947.

In their answer the defendants allege that the taxes in default had been paid prior to the commencement of the suit and therefore that no cause of action existed. The court below held that the action was commenced on September 18th, when the solicitor of the complainants signed the subpœna and gave it to his secretary for mailing to the sheriff, and thus that the suit had been instituted prior to the payment of taxes. He found further that there were no facts which would justify barring the complainants from the strict enforcement of their rights under the mortgage, and he therefore entered a decree of foreclosure. From this decree the defendants have appealed.

■ Unlike the new practice where by *Rule* 3 :3–1 a simple test is laid down as to when an action is commenced, *i. e.*, by filing a complaint with the court, the rules under the earlier practice were complex and in part obscure, varying from law to equity and in different classes of equitable actions. It will serve no good purpose to revive all this ancient learning. It is clear under the decisions of the Court of Errors and Appeals that the procedure in Chancery in proceedings *in rem*, as here, required not merely the filing of a bill of complaint, but the issuance of a subpœna and a *bona fide* attempt to serve it. *Bittles v. West Ridgelawn Cemetery*, 111 *N. J. Eq.* 416, 418 (*E. & A.* 1932). Not only was there no *bona fide* attempt here to serve the subpœna, for it never even reached the office of the sheriff, through whom service under the former practice had to be made, but it cannot even be said that the subpœna was issued.

The mere signing of the subpœna and handing it to one's secretary to send to the sheriff "after forwarding of the *lis pendens* to the county clerk's office" is not an issuance of a subpœna; the solicitor was in fact merely handing it to his *alter ego.* The intent, moreover, that the subpœna presently issue was lacking; it was to be sent to the sheriff only after the filing with the county clerk of the notice of *lis pendens.* Before the secretary got around to mailing the subpœna to the sheriff, her employer instructed her "to hold off until she had further instructions" from him. Such further instructions to forward the subpœna to the sheriff were never given. Not only, therefore, was the subpœna not issued, but the requisite intent to have it issue was in the first instance conditional on another act, *i. e.,* the forwarding to the county clerk of the notice of *lis pendens,* and then completely negatived by the command to await further instructions, which were never forthcoming. The intent to issue the subpœna "must be absolute, positive, and unequivocal." *Mutual Savings Fund Harmonia v. Gunne,* 110 *N. J. L.* 41, 52 (*E. & A.* 1932), and such cannot be said to be the fact here.

When service of the subpœna was acknowledged on November 15, 1947, the default in the payment of the quarter's taxes, which was the sole ground of foreclosure, had long since been cured by the payment of the taxes on September 19th. "The real purpose of the tax default clause in a mortgage is to preserve the mortgagee's security unimpaired by the existence of unpaid taxes as superior liens on the mortgaged premises." *Ewald v. William Fairchild, Inc.,* 139 *N. J. Eq.* 449, 452 (*Ch.* 1947). The complainants' security having been restored before their suit was commenced, it would be inequitable in the circumstances to permit them to take advantage of the defendants by the strict enforcement of their legal rights.

The decree appealed from is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For affirmance*—None.