GEORGE SIEGLER CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. HENRY K. NORTON, TRUSTEE OF THE PROPERTY OF THE NEW YORK, SUSQUEHANNA & WESTERN RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 29, 1951—Decided January 21, 1952.

376

Mr. *Raymond W. Troy* argued the cause for the appellant (*Mr. Charles S. Barrett, Jr.,* on the brief; *Messrs. Lum, Fairlie & Foster,* attorneys).

Mr. *Louis J. Greenberg* argued the cause for the respondent (*Mr. Samuel M. Cole,* attorney).

The opinion of the court was delivered by

ACKERSON, J. The plaintiff, George Siegler Co., brought this action in the Superior Court, Law Division, against Henry K. Norton, trustee of the New York, Susquehanna & Western Railroad Co., for property damage to plaintiff's truck resulting from a collision with one of defendant's trains at an unguarded grade crossing. The accident occurred at 10:40 A. M. on March 19, 1948, at the intersection of Lundy's Lane and the defendant's tracks in the Town of Secaucus, in Hudson County, and resulted not only in the destruction of the truck, but in the death of its operator, an employee of the plaintiff, referred to in the record as "Tony."

Lundy's Lane is a narrow and little used road leading from Tonnelle Avenue down to and over the railroad right-of-way on which were maintained two sets of westbound tracks and two sets of eastbound tracks, eight rails in all. Between the eastbound and westbound tracks there was an intervening space of from 30 to 50 feet (allowing for the range expressed in the testimony) and this space was sufficient to permit a truck, such as the plaintiff's, to stop thereon in safety from passing trains. The crossing was not guarded by any mechanical signaling device, safety gates or flagman, since apparently the highway at that point was not of the class which called for protection (*R. S.* 48:12–54) other than the ringing of a bell or the blowing of a whistle or horn from an approaching engine (*L.* 1948, *c.* 252, *p.* 1115, § 1; *N. J. S. A.* 48:12–57) and the standard crossing signs (*R. S.* 48:12–58) which had been erected on each side of

the railroad right-of-way bearing the words "Stop, Look and Listen."

The train involved in the accident was eastbound and plaintiff's truck, coming from the north, would have to cross first the two sets of westbound tracks, then the above mentioned intervening space, before coming to the first eastbound track on which the accident occurred.

The plaintiff produced only one witness as to the occurrence of the accident. He was A. Louis Gandalfo who, at the time of the occurrence, was engaged in dumping fill near the crossing. He testified that he was standing on top of an embankment situated about ten feet back from the outside westbound track (on the westbound side of the crossing) when he first observed plaintiff's truck go down Lundy's Lane and come to a stop parallel to the point where he was standing. He recognized the driver, Tony, and after waving to him resumed his work. He then heard a crash and turning around saw the "dump body fly around." Running down to the tracks he found the truck "all smashed up" in front of defendant's diesel engine about 300 feet up the eastbound track (the first reached after crossing the strip of ground between the two sets of tracks) and the body of the driver lying near it.

Gandalfo said he did not see Tony or the truck after it had stopped at the first set of tracks until after the collision and, therefore, was unable to supply any information concerning the conduct of the driver in the interim. The witness said he did not hear any whistle or bell sounded from the engine and did not hear the train's approach, but admitted he was not listening for it. He further testified that there were some swamp weeds about six feet high between the two sets of tracks but he did not say they would prevent the driver of the truck from seeing the approaching train. His only testimony concerning the view a person would have from the crossing along the right-of-way to the right of the truck (the direction from which the train came) was "You can't see half a mile up the track." No other testimony was

produced by the plaintiff concerning the happening of the accident.

The first witness for the defendant was the fireman, Sytsma, who was in the cab on the left side of the locomotive at the time in question. He testified as to his familiarity with the *locus in quo* and said that Lundy's Lane at that point is about 30 feet wide, has very little traffic and a person with normal eyesight, standing or sitting in a vehicle at the crossing, could observe an engine approaching, as this one was, from the vehicle's right, for at least half a mile away. However, the fireman, from his seat in the cab on the left side of the locomotive, could not see the crossing until he was about 300 feet therefrom because back of that point there is a very slight curve in the tracks bearing to the right as you go in an eastbound direction and the fireman's view ahead was therefore on a slight angle away from the crossing and obstructed by the hood of the engine until it came out of this curve 300 feet from the crossing. At this point the witness saw the plaintiff's truck for the first time coming over the first set of westbound tracks and proceeding at about six or seven miles an hour. The train was then traveling at a speed of from 40 to 45 miles an hour, which was well within its maximum speed limit of 60 miles an hour. This witness said that when the dump truck reached the plot of ground separating the westbound and eastbound tracks it continued on at the same slow speed. Then he saw that the driver of the truck was not looking in the direction of the on-coming train at all and realizing that the driver was not going to stop in the middle space, as was the practice. with trucks using that crossing, the fireman shouted to the engineer, who controlled the emergency brake from the opposite side of the cab, to stop the train. The brake was applied immediately but the train could not be stopped in time to avoid the collision.

With regard to signals, Sytsma testified that two long blasts, followed by two short blasts of the whistle, were sounded by the engineer at a signal post 1,200 feet from

the crossing and repeated or prolonged until the crossing was reached, and that the bell on the engine was operating, ringing continuously from a transfer point some distance away. At the time of the accident the sky was cloudy but there was no mist or fog and the visibility was good. The testimony of the engineer was substantially the same as that of the fireman, except, of course, he did not see the vehicle approaching from his left because of the obstruction of the engine and had to rely on the fireman for such an observation. Two other witnesses who were on the train corroborated the fireman and engineer as to the giving of the whistle signals.

After the plaintiff had presented its evidence, defendant moved for a dismissal of the action, pursuant to *Rule* 3:41–2, upon the ground that no proof had been adduced of any negligence on the part of the railroad which proximately caused the accident and upon the further ground that contributory negligence on the part of plaintiff's employee, the driver of the truck, barred a recovery as a matter of law. The trial judge reserved decision on this motion. At the conclusion of all the testimony, defendant renewed its motion for dismissal and also moved for judgment, pursuant to *Rule* 3:50 (the equivalent of a motion for a directed verdict under the former practice), on the grounds previously stated. The court denied both motions, relying, so far as the issue of contributory negligence is concerned, largely upon *R. S.* 48:12–83 which requires that issue to be submitted to the jury in cases involving accidents occurring at unprotected railroad crossings. The jury, by a ten to two vote (*N. J. S. A.* 2:27–233.1), returned a verdict for the plaintiff in the amount of $1,400.

Thereafter defendant moved for relief from the judgment entered on that verdict and for the entry of final judgment in its favor pursuant to *Rule* 3:60–2, or, in the alternative, for a new trial under *Rule* 3:59. This motion was likewise denied. Defendant then appealed the judgment to the Appellate Division of the Superior Court and, while pending there, we took jurisdiction of the appeal on our own motion.

The only questions raised on this appeal relate to the defense of contributory negligence and not to the issue of primary negligence on the part of the defendant.

At the outset we are called upon to determine the question of whether or not *R. S.* 48:12–83, which, as already observed, required the submission of the issue of contributory negligence to the jury in cases involving accidents at unprotected railroad crossings, has been superseded by *Rule* 3:41–2 (dealing with a motion for dismissal at the termination of the plaintiff's evidence) and *Rule* 3:50 (dealing with a motion for judgment at the close of the trial and providing that "Judgment on the motion shall be rendered without any action by the jury"). The statute (*R. S.* 48:12–83) provides as follows:

> "In any action against a steam railroad company to recover damages for injury or death occurring at any crossing at which the company has not installed any safety gates, bell or other warning or protective device of the kind usually employed to warn and protect the traveling public and such injuries or death are alleged to be due to the negligence of the company, the plaintiff shall not be nonsuited on the ground of contributory negligence on the part of the person injured or killed, but it shall be left to the jury to determine whether such person was exercising due and reasonable care under the conditions existing at the crossing at the time of such injury or death.
>
> If the jury shall determine that the person injured or killed was not exercising due and reasonable care under the circumstances, the verdict shall be against the plaintiff and in favor of the defendant."

■ Under the settled construction of Article VI, Section II, par. 3 of the Constitution of 1947, the Supreme Court has exclusive and plenary power to promulgate rules governing practice and procedure in our courts, as distinguished from matters involving substantive law. *Winberry v. Salisbury,* 5 *N. J.* 240 (1950). It follows, therefore, that where a statute, wholly procedural in its operation, is in conflict, either directly or by necessary implication, with a rule of procedure promulgated by this court pursuant to the authority delegated to it under the Constitution, the latter

must prevail. Such was the effect of our holding in the *Winberry* case where it was said (*page* 245) that "One of the objectives of the people in adopting the Constitution was to provide for uniformity as well as simplification and flexibility in the work of the courts. This objective would be frustrated by any * * * dual exercise of rule-making power."

The courts in construing the statute now under review (*R. S.* 48:12–83) have regarded it as essentially procedural in its application. Thus in *Waibel v. West Jersey & S. R. R. Co.,* 87 *N. J. L.* 573, 577 (*E. & A.* 1915) the court observed that what the statute does "* * * is to require the trial judges, *as a matter of procedure,* to submit the question of contributory negligence to the jury" in actions for injury or death at unprotected grade crossings. (Italics supplied.) It is now well settled that the statute does not abolish the defense of contributory negligence and our courts have frequently set aside plaintiffs' verdicts in such cases, notwithstanding the statute, where it clearly appeared there was contributory negligence as a matter of law. *Lynch v. Penna. R. R. Co.,* 88 *N. J. L.* 408, 412–413 (*Sup. Ct.* 1916); *Stryker v. Pennsylvania R. R. Co.,* 104 *N. J. L.* 299, 302 (*Sup. Ct.* 1927). In the latter case the court disposed of the subject with the following statement:

"While this act [*R. S.* 48:12–83] precluded control of the case by the court at the trial through nonsuit or directed verdict the fundamental rule that contributory negligence defeats recovery remains, and if the jury disregard its plain duty in dealing with such negligence it rests upon the court as heretofore to exercise its prerogative to set aside a verdict so rendered in order that justice may be done."

See also *New York, S. & W. R. Co. v. Thierer,* 209 *Fed.* 316, 321 (*C. C. A.* 2, 1913); *Masino v. West Jersey & S. S. R. Co.,* 41 *Fed.* 2d 645, 647 (*C. C. A.* 3, 1930).

As thus interpreted, the statute, in effect, merely postpones any consideration by the court of the question of contributory negligence as a matter of law until after a

verdict is rendered and is wholly procedural in its application. We therefore conclude that the statute operates within the field of our exclusive rule-making power and since it prevents the entry of a judgment of dismissal at the close of the plaintiff's evidence or a judgment for the defendant at the close of all the evidence where, under *Rule* 3:41–2 or *Rule* 3:50, such a judgment would be proper, the statute is necessarily in conflict with such rules and therefore is superseded thereby and no longer effective.

The conclusion thus reached with respect to this preliminary matter opens the way for our consideration of the basic question presented by this appeal. The question is whether or not the trial court erred in denying defendant's motion, made at the close of the evidence pursuant to *Rule* 3:50, for a judgment in its favor on the ground that the proofs clearly showed that the driver of defendant's truck was guilty of contributory negligence as a matter of law.

A railroad crossing is a "place of known danger" and it is the duty of a traveler on a highway to recognize it as such and to exercise that degree of care and prudence which a reasonably prudent person would exercise under like circumstances. *Grasso v. Pennsylvania-Reading Shore Lines,* 23 *N. J. Misc.* 188, 192 (*Sup. Ct.* 1945); *Di Giendemonica v. Penn.-Reading Seashore Lines,* 123 *N. J. L.* 296, 300 (*E. & A.* 1939); *Pennsylvania R. R. Co. v. Matthews,* 36 *N. J. L.* 531, 532 (*E. & A.* 1873); *Lynch v. Penna. R. R. Co., supra, p.* 413. The standard of caution prescribed by law for the operator of a vehicle at a railroad crossing is stated in *Joyce v. West Jersey & S. R. R. Co.,* 83 *N. J. L.* 608, 610–611 (*E. & A.* 1912) as follows:

"It is a primary rule of requisite legal caution that a person about to drive across a railroad is bound to use his eyes and ears, to watch for signboards and signals, to listen for bell and whistle, and to guard against the approach of trains by looking *each* way before crossing; and that the failure of the railroad company to provide or give a statutory signal will not relieve a person from making this dual observation, if he has an opportunity, by a view of the road to avoid danger."

See also *Conkling v. Erie R. R. Co.*, 63 *N. J. L.* 338, 341 (*E. & A.* 1899) and *Pennsylvania R. R. Co. v. Righter*, 42 *N. J. L.* 180, 185 (*E. & A.* 1880). Additionally such a traveler must exercise due care "to make the act of looking and listening reasonably effective." *Conkling v. Erie R. R. Co., supra; Central R. R. Co. v. Smalley*, 61 *N. J. L.* 277, 279 (*E. & A.* 1897); *Gehring v. Atlantic City R. R. Co.*, 75 *N. J. L.* 490, 492 (*E. & A.* 1907). And, as stated in the *Conkling* case, *supra*:

"* * * it is equally well settled that if a plaintiff has failed in this duty, and his negligent act has proximately contributed in any degree to the occurrence that has caused his injury, he cannot recover, no matter if it appear that the defendant was also negligent." It is also well settled that "If it clearly appears that the plaintiff's negligent conduct contributed to his injury so that there remains no fairly debatable question that it did so contribute, the decision of the question is for the court and not for the jury." *Joyce v. West Jersey & S. R. R. Co., supra; Pennsylvania R. R. Co. v. Righter, supra.*

■■ With these principles in mind and viewing the evidence before us in the light most favorable to the plaintiff's claim, it is obvious that the conduct of plaintiff's driver did not measure up to the standard of care required of him under the circumstances. We have already summarized the pertinent evidence. The railroad right of way was of considerable width and plaintiff's truck had to travel over the two sets of westbound tracks and then an additional 30 feet or more before reaching the nearest eastbound track where the accident occurred. The driver, had he looked, could have seen the approaching train approximately half a mile away. As already noted, defendant's fireman fixed this distance as "at least half a mile." Plaintiff's only witness, Gandalfo, while making no affirmative estimate, nevertheless, made the negative statement: "You can't see half a mile up the track," thus indicating a clear view for a considerable distance although, perhaps, not a full half mile. The fireman, who was the only witness who saw the movement of the truck across the westbound tracks and the intervening

space beyond, testified that the truck did not stop in its course and the driver, as he came into view, was not looking in the direction of the on-coming train but straight ahead. There can be no doubt that if the driver of the truck had made a careful observation at any time while passing over the westbound tracks and the additional open space beyond he could not have failed to see the train approaching from his right in time to have stopped his vehicle and avoided the collision. The following excerpt from the opinion in *Pennsylvania R. R. Co. v. Righter, supra,* (*p.* 187) is applicable: "If a traveler, * * *, by looking along the road [railroad], could have seen an approaching train in time to escape, it would be presumed, in case of collision, that he did not look, or, looking, did not heed what he saw." See also *Conkling v. Erie R. R. Co., supra,* (*p.* 344).

Thus we are led to the inescapable conclusion that the driver of plaintiff's truck was guilty of contributory negligence as a matter of law and, therefore, since such negligence was imputable to the plaintiff as his employer, the trial court should have granted defendant's motion for judgment in its favor pursuant to *Rule* 3:50. This conclusion makes it unnecessary to consider the further question of whether or not the verdict rendered was contrary to the weight of the evidence.

The judgment below is accordingly reversed and since the ground of such reversal is dispositive of the cause, judgment is directed to be entered in favor of the defendant. *Rule* 1:4-9(*b*).

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance*—None.