COLUMBIA LUMBER AND MILLWORK CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. SALVATORE DeSTEFANO AND JOSEPHINE DeSTEFANO, HIS WIFE, DEFENDANTS-RESPONDENTS, AND NICK FARRO, ET AL., DEFENDANTS.

ALFONSO NITTI, TRADING AS NITTI LUMBER CO., PLAINTIFF-APPELLANT, v. SALVATORE DeSTEFANO AND JOSEPHINE DeSTEFANO, HIS WIFE, DEFENDANTS-RESPONDENTS, AND NICK FARRO, ET AL., DEFENDANTS.

Argued February 16, 1953—Decided March 30, 1953.

118

Mr. *Saul Neivert* argued the cause for appellants (*Mr. Joseph L. Kaplan,* attorney for Columbia Lumber and Mill-work Co., Inc.; *Mr. Robert E. Rosenberg,* attorney for Nitti).

Mr. *Thomas F. Hueston* argued the cause for respondents (*Messrs. Hueston* and *Frank,* attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The plaintiff in each case appeals from a judgment for the landowners, defendants DeStefano, in an action to enforce a materialman's lien for materials furnished for a house constructed for the DeStefanos by the defendant Farro, a builder. The appeals were taken to the Appellate Division and are here upon certification of our own motion.

The judgment in the Nitti action was entered by the trial judge at the close of the proofs upon the DeStefanos' motion for an involuntary dismissal and the discharge of the lien. The judgment in the action by Columbia Lumber and Millwork Co., Inc. (referred to hereafter as Columbia), was entered upon a jury verdict of no cause for action.

Both appellants argue that the trial court committed error in ruling that the lien must be discharged if summons did not issue within five days after the filing of the complaint. The trial court based the ruling upon an amendment by *L.* 1949, *c.* 111, *p.* 445, to *R. S.* 2:60–137 (since superseded by *N. J. S.* 2A:44–99), which provided "* * * if such claimant shall fail to issue the summons within five days after the filing of the complaint * * * or such further time as the court may by order direct, the lien shall be discharged by an order signed by a judge of the Superior Court or a judge of the County Court."

In the Nitti action the motion for dismissal was granted because the summons issued, at the earliest, nine days after the filing of the amended complaint. In the Columbia action the trial judge viewed the proofs as presenting a jury question whether summons issued the day before or on the day of, but following, the filing of the complaint, and submitted the issue under an instruction, "If it was issued before the complaint was filed the verdict must be for no cause for action."

We do not see that any question of the issuance of the summons prior to the filing of the complaint was raised by the proofs in the Columbia action, and have therefore concluded that it was error to submit that question to the jury.

The claimant's attorney mailed the summons, dated October 16, 1951, with the complaint to the Superior Court Clerk at Trenton. The attorney seems to have overlooked the change in practice by which a civil action is now initiated by the filing of the complaint and not by the issuance of the summons. *Rule* 3:3–1; *R. S.* 2:60–137 as amended, *supra*. Both the summons and the complaint were stamped by the clerk as filed October 17. However, the attorney's transmitting letter expressly requested the clerk to "file, seal and return copy to me so that service can be made upon the defendants." Plainly, the attorney's action in mailing the summons to the clerk was not the issuance of the summons nor intended so to be. The letter made it clear that the issuance of the summons was not contemplated until after its return to the attorney. Thus the essential of an "absolute, positive, and unequivocal" intent to issue the summons was absent. *Williams v. Evenstein,* 2 *N. J.* 60 (1949).

The parties tried the case on the theory that if the mailing of the summons to the clerk was not the issuance of the summons, it was issued on the day of, but following, the formal filing of the complaint in the clerk's office. The attorney testified, "I issued the summons on the 17th of October with the intent of delivering the same to the Sheriff for service." Actually the summons was not delivered to the sheriff until January 21, 1952. This was because the attorney acceded to the request made personally by the De-Stefanos on October 17 to delay its delivery to the sheriff to afford them an opportunity to settle the several claims against their property, and considerable effort to effect a settlement, ultimately unsuccessful, was made in the intervening period. That conduct of the DeStefanos may estop them to raise the question whether the summons issued on October 17; but, although we are deciding the issue upon the premise which the parties and the trial court proceeded upon at the trial, we are not to be understood as holding that the summons did issue on that date. The claimant's attorney abandoned his purpose to forward the summons to the sheriff on October 17 and, whatever the reason therefor,

the summons plainly did not issue on that day within the test of what constitutes the issuance of a summons laid down by *Williams v. Evenstein, supra.* The case, however, must be returned for a new trial because we cannot say whether the verdict of the jury turned on that issue or on another issue submitted for its determination, namely, whether the action was commenced within four months from the date the last materials mentioned in the claim were furnished by Columbia. There is a clear conflict in the testimony in that regard, and Columbia's contention on this appeal that there is not has no merit.

The Nitti action does require our decision whether the failure to issue the summons within five days after the filing of the complaint makes it mandatory that the trial court discharge the claimant's lien. Nitti urges here, as he did upon the trial, that whether an action should be dismissed by the court for failure to issue the summons within time is purely a matter of practice and procedure governing the disposition of causes and thus not constitutionally within legislative cognizance but within the exclusive rule-making power of the Supreme Court under *Article* VI, *Section* II, *paragraph* 3 of the 1947 *Constitution,* as that provision was construed in *Winberry v. Salisbury,* 5 *N. J.* 240 (1950), and see *George Siegler Co. v. Norton,* 8 *N. J.* 374 (1952), and that, under *Rules* 3:4–1 and 3:41–2, the trial court was empowered "in its discretion" to determine whether an order of dismissal should be made in light of the particular circumstances accounting for the failure to issue summons within time. The DeStefanos respond that the mechanics' and materialmen's lien was unknown to the common law and exists only by reason of statute, and that the Legislature intended that a claimant was to be allowed the lien to satisfy the debt out of the owner's property only upon literal compliance by the claimant with the statutory provisions as to both the creation and the enforcement of the lien, so that the provision in question is "substantive in nature" and not merely procedural within the sense of the constitutional

grant of power to this court to regulate practice and procedure by rule.

■ We see no merit in the DeStefanos' argument. We think it is very clear that this provision, alike with a number of others in the statute relating to the procedure to be followed in prosecuting the action for enforcement of the lien, was never contemplated by the Legislature to be of the essence of the lien. Formerly the statute prescribed the form of the summons, *R. S.* 2:60-141; the manner of its service, *R. S.* 2:60-139; the form and contents of the complaint, *R. S.* 2:60-142; the plaintiff's burden of proof if the owner or mortgagee answered that the building was not liable to the debt, *R. S.* 2:60-144; that "The practice, proceedings and pleadings in an action to enforce a lien claim shall be conducted, and the judgment entered, as in actions in the circuit court to recover moneys due on contract," *R. S.* 2:60-143; and that "All defects and errors in an action or proceeding under this article may be amended by the court or judge thereof * * *, so that the merits of the controversy between the parties may be determined, * * *," *R. S.* 2:60-146. Such matters are not different from but are ordinary procedural aspects of the usual civil action. The former Court of Errors and Appeals emphasized that there is nothing "occult or mysterious" about the action to enforce the lien, *Vreeland Bldg. Co. v. Knickerbocker Sugar Refining Co.,* 75 *N. J. L.* 551, 554 (1907). And this court has held that such provisions should be "liberally construed to effectuate the remedial statutory policy," distinguishing in this regard the provisions requisite to constitute the lien—the filing with the proper county clerk of the notice of intention in statutory mode, *R. S.* 2:60-112 and 113, and, within four months after the date of the last materials furnished, the filing with such clerk of the lien claim, *R. S.* 2:60-129 and 130, and the commencement of the action to enforce the claim, *R. S.* 2:60-136—which provisions are "strictly construed." *Friedman v. Stein;* 4 *N. J.* 34 (1950). If there was ever reason to doubt the legislative intent, the Legislature has now fully resolved that doubt. In the revision of

*Title* 2 of the *Revised Statutes* dealing with the Administration of Civil and Criminal Justice, *L.* 1951, *c.* 344, a project undertaken expressly to delete the procedural matter therein, *N. J. S.* 2*A*:44–66 *et seq.*, superseding the former Mechanics' Lien Act, carries forward none of the provisions aforementioned. Obviously they were deleted because the Legislature never · contemplated that they also should be viewed as conditioning the claimant's right to the benefit of the lien, but rather contemplated that they should be regarded as being merely procedural. Hence their subject matter is constitutionally governable by rules promulgated by this court within its rule-making responsibility.

And this conclusion as related to the provision under consideration is strongly buttressed by its history. The provision was introduced into *R. S.* 2:60–137 by *L.* 1949, *c.* 111, *p.* 445, mentioned above. The Mechanics' Lien Act had provided for the enforcement of the lien by an "action" commenced by "summons," *R. S.* 2:60–135. The Rules of Civil Procedure effective September 15, 1948 provided for commencement of a "civil action" "by filing a complaint with the court," *Rule* 3:3–1, and for dismissal by the court "in its discretion" for failure to issue summons within five days thereafter, *Rule* 3:41–2, since amended effective January 1, 1953; see also *Rule* 3:4–1, as amended. The 1949 statute brought the Mechanics' Lien Act into conformity with the rules by providing for the enforcement of the lien by "a civil action in the nature of an action· at law" commenced "by filing the complaint," and by adding the clause at issue to cover the contingency of the failure to issue the summons within five days. There could have been no reason for the change except to eliminate a conflict with the rules on a subject which is manifestly procedural in its very nature. The fact that the five-day interval provided for issuance of the summons was identical with that under the rule points plainly to such purpose. True, dismissal for failure to issue the summons within the interval was and is explicitly made a matter of judicial discretion under *Rule* 3:41–2, but the statutory authority of the judge to enlarge the five-day

period for "such further time as the court may by order direct" certainly has substantially the same import.

Thus, even though the provision continues in *N. J. S.* 2*A* :44–99, we are convinced that neither in context nor legislative design was literal compliance with its terms a new requisite engrafted upon and conditioning the claimant's right to the full benefit of the lien. It is merely a procedural incident of the prosecution of the action. And being wholly procedural the provision must give way to the pertinent rules (by amendments of the rules effective January 1, 1953, the time allowed for issuance of the summons is now ten days), if in any degree in conflict therewith. *Winberry v. Salisbury, supra; George Siegler Co. v. Norton, supra.*

■■ There is left for consideration the question whether the Nitti cause should be remanded for further proceedings or be finally decided here. We think the latter course is appropriate in the circumstances of the case. The DeStefanos rested their defense without offering any proofs, and the implication is therefore clear that they have no defense on the merits and rely solely on their argument that the lien must be discharged because the summons failed to issue within five days after the filing of the complaint. We are satisfied that it would be a mistaken exercise of discretion for the trial judge to dismiss the action and discharge the lien on the facts presented, and there is therefore no reason to return the case for the trial court's further consideration. It is not denied that the delay in the issuance of the summons was primarily the consequence of the delay in the Superior Court Clerk's office in the issuance of the certificate of the commencement of the action which the claimant was required by *R. S.* 2 :60–140 (now superseded by *N. J. S.* 2*A* :44–101, which is comparable in that respect) to obtain and present to the county clerk, who in turn must indorse on the lien claim the notation that an action thereon has been commenced. The complaint was filed Decmber 10, 1951, and one of the staff of the Superior Court Clerk required its amendment to allege the particulars of the filing of the lien claim in the office of the county clerk. The

amended complaint was filed December 26. The certificate of commencement of the action was mailed to the claimant's attorney and received by him on January 2, 1952. The attorney prepared the summons on January 4 and delivered it to the sheriff for service on January 10. We do not consider that this sequence of events establishes such untoward or groundless delay as to justify the court in depriving Nitti of the lien not challenged on the merits by the DeStefanos.

The judgment in the Nitti action is reversed with direction to the Superior Court, Law Division, to enter a judgment in favor of plaintiff specially against the lands of the defendants DeStefanos in the amount claimed.

The judgment in the Columbia action is reversed with direction for a new trial consistent with this opinion.

HEHER, J. (dissenting in part). I hold the view that it was within the competency of the Legislature, in establishing the mechanism for the effectuation of the statutorily created mechanics' and materialmen's liens, to limit the time for the commencement of the enforcement action and, by the same token, the time for the issuance of the summons and the prosecution of the action. If the lawgiver may place a time limitation upon the commencement of the action, and there can be no doubt of this, it may also provide for the diligent prosecution of the action, as was done here. *L.* 1949, *c.* 111, *pp.* 444, 445, amending *R. S.* 2:60–136 and 2:60–137; *N. J. S.* 2A:44–98 and 2A:44–99. It may condition the lien and its enforcement according to its own ideas of policy directed to the expeditious service of the relative rights of the landowner and the unpaid mechanics and materialmen in realizing the security for the satisfaction of their claims; and such limitations are of the essence of the right and not merely procedural within the concept of *Article* VI, *Section* II, *paragraph* 3 of the *Constitution* of 1947, conferring upon the Supreme Court jurisdiction to regulate by rule "the practice and procedure in all  *  *  *  courts in the State."

Although known to the civil law, the mechanics' and materialmen's liens were not given recognition at common law

nor allowed in equity. *South Fork Canal Co. v. Gordon,* 6 *Wall.* 561, 18 *L. ed.* 894 (1868) ; *Van Stone v. Stillwell & B. Mfg. Co.,* 142 *U. S.* 128, 12 *S. Ct.* 181, 35 *L. ed.* 961 (1891) ; *Springer Land Association v. Ford,* 168 *U. S.* 513, 18 *S. Ct.* 170, 42 *L. ed.* 562 (1897). In New Jersey, such liens are exclusively statutory in origin; and, being in derogation of the common law, the provisions of the statute giving rise to the lien are to be strictly construed, while the provisions for the enforcement of the lien thereby created are to be liberally construed to effectuate the remedial statutory policy of rendering the land and buildings collaterally liable for the payment of the price or value of work performed and materials furnished in the erection or reparation of the buildings. The claim for labor and materials is a property right which does not ripen into an enforceable lien until there has been substantial compliance with all the statutory conditions prerequisite. This is fundamental in the law of exegesis. The lien does not materialize until all the statutory requisites are met. This by legislative ordinance, in a field peculiarly its own. The statutory lien affords a cumulative remedy for the enforcement of the underlying debt. The claimant's status is that of a general creditor until all the things are done which give him the security of the statutory lien. Until then, the lien is inchoate merely. *Friedman v. Stein,* 4 *N. J.* 34 (1950).

The constitutional rule-making function of the Supreme Court does not modify or impair the basic power of the Legislature, in the creation of rights and the prescription of duties and the establishment of statutory jurisdictions for their enforcement, to provide the procedural due process made a *sine qua non* by *Article* I, *paragraph* 1 of the *State Constitution* of 1947 and the Fourteenth Amendment to the Federal Constitution. Even under the interpretive principle of *Winberry v. Salisbury,* 5 *N. J.* 240 (1950), this must necessarily be so; for, if the exercise of legislative power were made absolutely dependent upon the provision of procedural due process by rule of court, the failure of such action by the court would subvert the legislative process. It

will not do to say that such an impasse is beyond the realm of reasonable likelihood. The possibility of a stalemate is a factor of major import in assessing the essential quality and meaning of the constitutional rule-making grant to the court. The related constitutional provisions, legislative and judicial, are to be taken and compared together in assaying the elemental content and significance of each, and effectuated in keeping with the reasonably discernible intention of the framers of the instrument and the electorate in according ratification.

For instance, the exercise of the State's right to effect an escheat by the judicial process of property *bona vacantia* is in its very nature the sole province of the Legislature; and the Legislature may, as an inseparable incident of its power in this regard, condition the judicial declaration of escheat upon such notice and hearing as it may deem appropriate to the nature of the proceeding and consonant with the reasonable demands of due process. The Legislature may also provide for a claim of property by the unknown or missing owner before and after the judgment of escheat, reasonably conditioned as to time and otherwise, and the procedure for the establishment and prosecution of the claim; and a rule of court cannot enlarge or diminish the jurisdiction thus conferred nor abridge or enlarge the substantive rights of litigants. The Legislature may define the court's jurisdiction to entertain the suit; and it is axiomatic that the exercise of the jurisdiction is subject to the terms of the grant. A statute providing for an escheat of property without procedural due process would be void. *State v. Standard Oil Co.,* 5 *N. J.* 281 (1950), affirmed *sub nom. Standard Oil Co. v. State of New Jersey,* 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. ed.* 1078 (1951). See, also, the dissenting opinions in *State v. Otis Elevator Co.,* 12 *N. J.* 1 (1953). This is not perforce to say that the Legislature may not supply due process by relation to existing rules of court; but in that event the provision of process would be the Legislature's nonetheless. *Jersey City v. Martin,* 127 *N. J. L.*

18 (*E. & A.* 1941); *Hutches v. Borough of Hohokus*, 82 *N. J. L.* 140 (*Sup. Ct.* 1911).

So, too, it is the exclusive province of the Legislature to provide for mechanics' and materialmen's liens, and to condition their enforcement as to time and mode in keeping with what it conceives to be the relative rights of the parties in interest; and where the conditions imposed are of the substance of the special statutory jurisdiction, they are not procedural within the intendment of the cited constitutional grant of authority to the Supreme Court to regulate matters of practice and procedure in the courts. Such limitations are so intimately identified with the substantive process as to be inseparable from it. The lien is a statutory creation; the conditions upon which its creation and enforcement depend are of the substance and cannot be varied or modified by rules of court. *Vide Ward v. Chamberlain*, 2 *Black* 430, 17 *L. ed.* 319 (1863). Such liens have their genesis in the exercise of the legislative power. Until all the statutory jurisdictional requirements and conditions precedent are satisfied, there is no enforceable lien.

I cannot accept the thesis that *Rules* 3:4–1 and 3:41–2 supersede the statute and regularize summons issued within ten days after the filing of the complaint, with dismissal of the action discretionary for noncompliance with the regulation. Apart from the question of power, these are rules of general practice not designed to cover actions to enforce mechanics' liens.

In No. A-100, involving the claim of Columbia Lumber and Millwork Co., Inc., I find a timely compliance with the statutory requirement for the issuance of the summons. There was no issue of fact in this regard; and it was error to submit the question to the jury. Since the verdict of the jury may have turned upon this point, the judgment must be reversed and a new trial awarded on the issue of timely commencement of the enforcement action.

In No. A-101, the Nitti claim, the summons was not issued within the time prescribed by the statute. The statute then in force empowered the court to extend the prescribed

time for issuing the summons. There was no extension of the time here; nor was an extension sought. There is no occasion to determine whether under this statutory authority a *nunc pro tunc* extension would be permissible, if application were made. The statute then also provided that for failure to issue the summons within the time fixed, or within such further time as the court by order should direct, "the lien shall be discharged." This course is mandatory; and accordingly I would affirm the judgment in this case.

No. A–100:

HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.

No. A–101:

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING and BRENNAN—4.

*For affirmance*—Justices HEHER, WACHENFELD and JACOBS —3.