**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1345-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KEVIN L. WILLIAMS,

    Defendant-Respondent.

_____

> Submitted May 5, 2025 – Decided July 1, 2025
>
> Before Judges Sabatino and Jablonski.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 19-10-0658.
>
> Elizabeth Parvin, Acting Gloucester County Prosecutor, attorney for appellant (Timothy Gaskill, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).
>
> Wayne Powell Attorney, PC, attorney for respondent (Wayne Powell, on the brief).

PER CURIAM

The State appeals from a November 15, 2024 order granting defendant's application to suppress certain evidence gathered following a warrantless search of his motor vehicle. The State argues the trial judge relied on improper and inconsistent facts and flawed legal interpretations when it granted defendant's motion to suppress. We disagree and affirm.

I.

After Washington Township police officers stopped defendant's motor vehicle, searched it and its contents without a warrant, and discovered a firearm in a backpack found in the car, a Gloucester County grand jury indicted defendant for unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1), possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), and certain persons not to possess weapons, N.J.S.A. 2C:39-7(b)(1). Defendant moved to suppress the evidence found as a result of the search. The trial judge granted the application. We granted leave to the State to appeal.

The facts pertinent to this appeal are taken from the one-day suppression motion hearing and the body-worn camera footage of Washington Township Police Officer Joseph Russo. Russo testified he was training under the

supervision of Police Officer Cote[1]. Early in the morning of June 6, 2019, they were patrolling the Mayfair motel parking lot the officer described as a "known narcotic area." Russo saw defendant's car pull out of the motel's parking lot and he pulled defendant over at 9:28 a.m. The officer explained the basis for the stop included "[a] cracked windshield and tag obstruction." Review of Russo's body-worn camera footage, however, revealed the numbers, letters, and phrases depicted on defendant's license plate were legible, and no windshield crack was readily visible from the recording of the encounter.

Russo approached the driver's side of defendant's car and asked for defendant's driver's license and insurance information. Defendant could not locate the requested documents and explained that he was driving his mother's car. Upon request, however, defendant complied with Russo's direction to provide his name and social security number. Russo ordered defendant to exit the vehicle and to follow him to his patrol car.

As defendant stood with Cote outside of the patrol car, Russo researched defendant's information and discovered an active arrest warrant and that

---

[1] This officer did not testify at the suppression hearing and the officer's first name does not appear in the record.

A-1345-24

defendant's license was suspended.  When asked whether the vehicle contained any contraband, defendant responded he "[does not] do drugs."

Russo arrested defendant, searched him, and discovered approximately $2,000 in cash.  Defendant refused the officers' request to consent to the search of his car.  As a result, Cote called for a canine team to sniff-search the car.

After approximately thirty-five minutes, the dog arrived.  A positive "hit" was returned following the sniff and Russo and Cote consequently searched the car.  They did not discover any narcotics.  They did, however, seize defendant's backpack.  They opened it on the spot and without a warrant and discovered defendant's wallet containing his identification and credit cards, a social security card, and a handgun.

After defendant was indicted, he moved to suppress the handgun arguing that it resulted from an unconstitutional search.  Following a hearing and in a detailed and cogent supplemental statement of reasons, the trial judge reviewed the pertinent facts and made certain observations about the officer's encounter with defendant.

Ultimately, the judge suppressed the handgun, finding

> the police had a flimsy basis for the initial stop which prolonged the interaction by waiting for a dog to create probable cause which they admitted they did not have upon the arrest of the defendant on the

A-1345-24

outstanding warrant. In my view they should have impounded the vehicle (defendant's license was suspended)[,]then have the dog sniff it[,] and then get a warrant.

The judge reached this conclusion after analyzing three justifications that the State relied upon to explain the continued interaction with defendant: (1) the purportedly occluded license plate, (2) the cracked windshield, and (3) the dog sniff.

A.

Turning first to the obstructed license plate, the judge observed that to pull defendant over, Russo and Cote "relied . . . on the fact that his license plate was partially obstructed by a license plate holder allegedly in violation of N.J.S.A. 39:3-33." However, the judge found this justification insufficient, noting he "personally observed the license plate as depicted through the body-worn camera footage, and it . . . was clearly legible." He concluded, therefore, that "there was no basis for a stop and seizure of the automobile and personage of . . . defendant." The judge determined that instead, the "police chose to follow defendant that day entirely because [defendant] had just left the Mayfair motel." Noting that the motel in question "has a long reputation as a place to obtain and consume controlled dangerous substances[,] to cheat on your spouse[,] and to otherwise engage in seedy behavior" but also that the

5

officers "observed no traffic infraction before the stop," the judge was unpersuaded that the continued police contact was justified.

## B.

The judge was similarly unpersuaded that the stop could be justified because of defendant's "cracked windshield contrary to N.J.S.A. 39:3-75." According to the judge, the police could not have known that defendant's front windshield was cracked "because they were following him from behind." Further, after viewing the body-worn camera footage himself, the judge characterized the crack as "miniscule" and "barely noticeable." He ultimately determined that the "little crack clearly could not have caused 'undue or unsafe distortion of visibility' and was not 'unduly fractured, discolored[,] [nor] deteriorated' as is the prohibition in section 3-75 of the motor vehicle code."

Based on those observations, the judge concluded the "police in this case deviated from the traffic mission which should have ended upon defendant's arrest on an outstanding warrant." He noted that "[a]fter defendant was secured in handcuffs[,] another [fifteen] to [twenty-five] minutes elapsed wherein the police looked from every angle through the windows of the defendant's car and were unable to establish [n]either probable cause [n]or a reasonable suspicion." To the judge, "[t]heir mission at that point [should

6

have been] to take the defendant to the station house for processing on the warrant and send him on his way."  The officers didn't.  Rather, Russo and Cote "waited a significant amount of time for a canine unit to arrive which then alerted for the odor of narcotics and which gave probable cause to search the car on the roadside."

## C.

As to the State's third justification, the canine sniff, the trial judge held that the logic of the State's position was flawed because there were no spontaneous nor unforeseeable circumstances that justified the continued encounter.  He explained:

> The entire rationale for why [the officers] chose to follow the defendant's vehicle is because he had just left the notorious Mayfair motel.  His explanation for that was that he was tired and spent the night.  The police expected from the outset that the defendant may have guns or drugs or both in his motor vehicle. When the initial stop failed to generate the expected probable cause the traffic mission was extended a substantial period of time until the dog sniff could create probable cause.

Critical of the decision of the officers to prolong the interaction, the judge concluded the "dog was requested not because the police had a reasonable suspicion but because the defendant had just left the Mayfair motel."  According to the judge, the "traffic mission of arresting the

7

defendant" on the warrant issued for a traffic offense was "substantially prolonged by the decision to request a canine search." It was not, according to the judge, "spontaneous or unforeseeable" that "a person who had recently left the Mayfair motel would have guns or drugs or both in his vehicle and on his person."

Based on this analysis, the judge suppressed the handgun. We granted the State's request for permission to file an interlocutory appeal of this decision. Substantively, the State raises two points on appeal:

> [POINT 1] THE TRIAL COURT RELIED ON AN IMPROPER AND INCONSISTENT INTERPRETATION OF FACT WHEN GRANTING DEFENDANT['S] MOTION TO SUPPRESS.
>
> [POINT II] THE TRIAL COURT RELIED ON IMPROPER LEGAL ANALYSIS WHEN GRANTING DEFENDANT['S] MOTION TO SUPPRESS.

II.

The scope of our review of a trial court's decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237

A-1345-24

N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). We defer to those factual findings because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Accordingly, we "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect against unreasonable searches and seizures. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017) (citing Arizona v. Johnson, 555 U.S. 323, 333 (2009)). "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)). The State has the

9

burden to prove by a preponderance of the evidence that such suspicion was present. State v. Amelio, 197 N.J. 207, 211 (2008).

During such a stop, police officers are permitted to inquire "into matters unrelated to the justification for the traffic stop." Dunbar, 229 N.J. at 533 (quoting Johnson, 555 U.S. at 333). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, 575 U.S. 348, 354 (2015) (citing United States v. Sharpe, 470 U.S. 675, 686 (1985)). "Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." Id. at 356. Thus, absent articulable, reasonable suspicion, the extension of a motor vehicle stop to conduct a canine sniff constitutes an unreasonable seizure. Id. at 348. The New Jersey Supreme Court adopted this federal standard in Dunbar, 229 N.J. at 533-34.

In Dunbar, the Court held "an officer does not need reasonable suspicion independent from the justification for a traffic stop . . . to conduct a canine sniff," but such suspicion is, nevertheless required if the canine sniff administration would "prolong[] a traffic stop beyond the time required to complete the stop's mission." Dunbar, 229 N.J. at 540 (first citing Illinois v.

<u>Caballes</u>, 543 U.S. 405, 408 (2005), then citing <u>Rodriguez</u>, 575 U.S. at 357). The articulable, reasonable suspicion must be independent from the basis for the underlying motor vehicle stop to continue detention beyond the stop's mission to administer a canine sniff. <u>Id.</u> at 536; <u>see also</u> <u>State v. Nelson</u>, 237 N.J. 540, 554-55 (2019) (finding a police officer had independent reasonable suspicion to prolong a traffic stop for a canine sniff based upon defendant's nervous behavior, conflicting explanations of his itinerary, a tip from the Bureau of Alcohol, Tobacco, and Firearms that someone fitting defendant's description would be transporting illegal substances, large bags in the cargo hold, an overwhelming odor of air freshener, a lack of personal belongings in defendant's car, and defendant's prior record of narcotics arrests).

A motor vehicle stop can become an investigatory <u>Terry</u>[2] stop if the circumstances give rise to an articulable, reasonable suspicion unrelated to the traffic offense. <u>See</u> <u>Nelson</u>, 237 N.J. at 552. However, to conduct an investigatory stop of a motor vehicle, there must be "some objective manifestation the suspect was[,] or is[,] involved in criminal activity." <u>State v. Arthur</u>, 149 N.J. 1, 8 (1997) (quoting <u>State v. Thomas</u>, 110 N.J. 673, 678 (1988)). Independent, articulable, and reasonable suspicion is necessary

---

[2] <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

because the law "discourage[s] the police from turning a routine traffic stop into a 'fishing expedition for criminal activity unrelated to the stop.'" Hornbergen v. Am. Broad. Cos., 351 N.J. Super. 577, 614 (App. Div. 2002) (quoting Carty, 170 N.J. at 632). "In determining whether reasonable suspicion exists, a court must consider the 'totality of the circumstances . . . .'" Nelson, 237 N.J. at 554.

Considering these principles, we affirm for the reasons expressed in the motion judge's well-reasoned opinion. We agree with the trial judge that the initial stop was not lawful since neither the alleged license plate obstruction nor the cracked windshield violated any statute. See State v. Carter, 247 N.J. 488, 504 (2021). Neither, therefore, could create the reasonable suspicion necessary to permit any additional search of defendant's motor vehicle. Other than defendant's departure from a venue merely suspected to be a haven of nefarious activity—which alone is not a criminal act—the officers did not observe any other criminal conduct. Therefore, defendant's departure from the motel cannot justify the officers' continued intrusion. Finally, defendant's words spoken and nervousness he might have displayed, considered in the totality of the circumstances of defendant's otherwise lawful activity, could not provide any suspicion, much less reasonable suspicion, to continue the traffic

stop beyond its primary mission. The probable cause created following the dog sniff followed an unlawful stop devoid of any reasonable suspicion, and, therefore, represented an unreasonable warrantless seizure.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13

A-1345-24