114 N.J. Super. 372 (1971)
276 A.2d 397
EDWIN URDANG, ASSIGNEE OF MONARCH CHRYSLER PLYMOUTH INC., PLAINTIFF,
v.
PHILIP MUSE, DEFENDANT.
Superior Court of New Jersey, District Court, Essex County.
Decided March 30, 1971.
*373 Mr. Joseph H. Cerame, attorney for plaintiff.
Mr. Philip Muse, defendant pro se.
YANOFF, P.J.D.C.
This case involves the enforceability of an acceleration provision in a retail installment contract in the light of Uniform Commercial Code provisions, N.J.S. 12A:1-203 and 12A:2-302, and the equitable powers declared applicable to County district courts in Vineland Shopping Center, Inc. v. DeMarco, 35 N.J. 459 (1961), and Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116 (1967).
The procedural aspects of the case merit comment. Plaintiff, appearing pro se, claimed a balance of $771.25 after sale of the security, an automobile, under a retail installment sales contract. Default was entered on August 25, 1970. The case was set down for proof on September 30, 1970, when defendant appeared. The case was then adjourned to October 7, 1970. The result of the hearing was that the default was opened and the case adjourned.
On December 18, 1970 I wrote a letter to the parties fixing a date for taking of testimony as to the balance at time of default, tender made by defendant after default, and the commercial setting pursuant to N.J.S. 12A:2-302 of the transaction, for the purpose of aiding the court in ascertaining whether the results in the case would be unconscionable. Thereafter counsel appeared for plaintiff and a hearing was held in which plaintiff was represented by counsel. Defendant still appeared pro se.
At the hearing a representative of the finance company testified. Defendant also testified and was subject to cross-examination.
I find the following facts from the testimony before me:
Under date of April 17, 1968 defendant (buyer) entered into a retail installment sales contract with Monarch Chrysler Plymouth Inc., for the purchase of an automobile. The time sales price was $4245.14, with a down payment of $1103.54, *374 leaving a balance of $3141.60, payable in 30 monthly installments of $104.72. Seller assigned to Chrysler Credit Corporation by an assignment which is an integral part of the agreement. Plaintiff obtained the contract by assignment, for the sum of $160. The contract contains a default clause which reads in part:
In the event Buyer defaults in any payment * * * Seller shall have the right at its election to declare the unpaid portion of the Time Balance under said contract to be immediately due and payable. * * * Waiver by Seller of any default shall not be deemed a waiver of any other default. * * *
December 16, 1969, when the 20th installment fell due, defendant defaulted under the contract. At about that date he took the motor vehicle to Washington, D.C., for the purpose of finding employment there, and did not return until the end of March 1970. The finance company attempted unsuccessfully to find him and had reason to believe that he was out of the State with the motor vehicle. The repossession occurred when defendant returned to New Jersey. His wife at all times remained in the State.
Defendant's testimony was that after repossession he made a loan from a small loan company and offered to pay Chrysler Credit Corporation $900. In corroboration he produced a note dated April 2, 1970 evidencing a loan of $1000. The finance company employee testified that on April 3, 1970 he received a telephone call from defendant and quoted him a pay-off figure of $1180.71. He stated he could not deny that defendant had offered the $900. He testified also that as of that date the defaulted installments amounted to $266.39, and that repossession costs amounted to $52.77, making a total of $319.16. I find as a fact that defendant offered to pay $900 on account to the finance company to obtain repossession of the vehicle.
The representative of the finance company testified that one of the reasons he refused the tender of $900 was that defendant had been out of the State and that he had difficulty *375 in locating him. He testified also as to a record of late payments prior to January 1970, ranging up to a period of ten days in the most extreme occasions.
The contract provides that removal from the state in which delivery was made for a period of 30 days or more without the seller's consent constituted an event of default. The contract contains no provision to the effect that the seller may repossess if he feels insecure. I find as a fact that defendant committed a breach of contract in removing the property from the State for a period in excess of 30 days. The finance company was therefore justified both for that reason and for the nonpayment of two installments in its repossession.
I have no doubt that the court may under its equitable powers, as enunciated in Vineland Shopping Center Inc., and Carteret Properties, supra, relieve against forfeiture. This it may do despite the fact that defaults have taken place which entitled the seller to repossess the vehicle. The essence of the power to relieve against forfeiture is that equity may intervene to mitigate inequitable consequences of a breach. 2 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 450 at 282.
If there were no default, the case would terminate at that point. But the question remains whether, after default, the finance company had the right to retain possession and sell the vehicle despite defendant's offer to pay all but $280.71 of the indebtedness. In considering this issue, I must take cognizance of the finance company's witness' testimony that the vehicle was worth the balance remaining after crediting the $900. Thus, it is clear that if the finance company had accepted the $900 and retained its lien, it would, in a realistic sense, have been in no jeopardy.
Plaintiff is an assignee and, of course, in no better position than the assignor. The contract in question is a product of the security draftsman's art. The warranty provisions are similar to those in Henningsen v. Bloomfield Motors, Inc., *376 32 N.J. 358 (1960)  in effect a limitation of the seller's obligations. There can be no doubt that here defendant buyer had no more power to negotiate the terms of this contract than did the buyer in Henningsen. There also can be no doubt that, if defendant had read the contract  a pointless effort in view of his lack of bargaining position  he would not have understood it. Henningsen, invalidated the warranty provisions of a contract such as this as against public policy. Here the crucial question is whether the seller's acceleration option should be enforced and to what extent.
An acceleration provision is not the law of the Medes and Persians, operating with iron rigidity under all circumstances, but is itself subject to normal, equitable principles, which the court may apply. Vineland Shopping Center, Inc., and Carteret Properties, supra. Thus, taxes paid late, but prior to the commencement of foreclosure, do not trigger the acceleration clause. In Williams v. Evenstein, 2 N.J. 60 (1949), Chief Justice Vanderbilt said:
"The real purpose of the tax default clause in a mortgage is to preserve the mortgagee's security unimpaired by the existence of unpaid taxes as superior liens on the mortgaged premises". Ewald v. William Fairchild, Inc., 139 N.J. Eq. 449, 452 (Ch. 1947). The complainants' security having been restored before their suit was commenced, it would be inequitable in the circumstances to permit them to take advantage of the defendants by the strict enforcement of their legal rights. [At 63]
Where the obligee has engaged in a course of conduct which results in late payment, which would otherwise set off the acceleration clause, the intervention of equitable principles prevents the clause from becoming operative. Balmoral Arms v. Rutkin, 104 N.J. Super. 354 (Ch. Div. 1969); S.D. Walker, Inc. v. Brigantine Beach Hotel Corp., 44 N.J. Super. 193 (Ch. Div. 1957).
This has long been the view in this State. In Sire v. Wightman 25 N.J. Eq. 102 (Ch. 1874) the mortgagor made a late payment of interest which was accepted. Further payments *377 were met promptly and accepted by the mortgagee. Two years after the "default" mortgagee attempted to accelerate. It was held that the acceleration provision was not operative. The court said
His [mortgagee's] acceptance of the interest which was due in June, 1871, accompanied as it was by his deliberate acknowledgment of the receipt as of the very day on which it had fallen due, was a waiver of the forfeiture to which he had become entitled. (At p. 104)
See also Martin v. Melville, 11 N.J. Eq. 222 (Ch. 1856). As was said in S.D. Walker, Inc., supra,
It is established law that if the mortgagor's default was the result of the conduct of the mortgagee, a court of equity will relieve the mortgagor from the effect of the acceleration clause. [44 N.J. Super. at 204]
Accord, Freund v. Weisman, 101 N.J. Eq. 245 (E. & A. 1927); and see 79-83 Thirteenth Ave. v. DeMarco, 44 N.J. 525, 535 (1965); Gilbert v. Pennington Trap Rock Co., 135 N.J. Eq. 587, 591 (Ch. 1944).
In 59 C.J.S. Mortgages § 495 (6) it is said:
Equity will relieve the mortgagor where the mortgagee has been guilty of unconscionable conduct as where the default is caused or induced by the mortgagee's acts or declarations. Equity may also relieve against acceleration where the default results from accident or mistake, or where strict enforcement of acceleration would impose an unconscionable hardship on the mortgagor and give the mortgagee an unconscionable advantage [At 794]
In Bisno v. Sax, 175 Cal. App.2d 714, 346 P.2d 814 (Cal. D. Ct. App. 1960), the court took into account the hardship upon the obligor in barring application of the acceleration clause. It said:
Equity frequently refuses to recognize the express contractural provisions for the security of the loan where their enforcement would not be consonant with substantial justice. [346 P.2d at 822]
*378 In Skeels v. Universal C.I.T. Credit Corp., 335 F.2d 846 (3 Cir.1964), the finance company loaned money to an automobile dealer on the security of the dealer's automobile inventory. Periodically it made a physical check of the cars to ascertain the presence of the inventory. It was its practice, when it found cars missing, to allow dealer an opportunity to rectify the deficiency. On the occasion which gave rise to the suit it did not do so, but seized and sold the automobiles. The dealer sued the finance company and recovered both compensatory and punitive damages. The judgment for punitive damages was reversed, but the judgment for compensatory damages was not disturbed. See also Romero v. Schmidt, 15 Utah 2d 300, 392 P.2d 37 (Sup. Ct. 1964) where the fact that lender's security was not endangered moved the court to hold that the indebtedness was not accelerated by late tender of both interest and principal. Annotations, 70 A.L.R. 993 and 97 A.L.R.2d 998, contain numerous examples of application of the same principles.
Both statute and decision have made it clear that the policy of this State is that there be fair dealing in transactions such as this.
The Uniform Commercial Code provides:
(1) if the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the Court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result [N.J.S. 12A:2-302]
It also provides:
Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement. [N.J.S. 12A:1-203]
In Unico v. Owen, 50 N.J. 101 (1967), the Supreme Court voided a contractual provision under which a buyer of consumer goods agreed not to set up defenses against the *379 seller upon the assignment of the contract. Speaking for the court, Justice Francis said:
The policy of our State is to protect conditional vendees against imposition by conditional vendors and installment sellers. See N.J.S.A. 1716 C-1 et seq. [At 124]
He continued:
And section 9-206 in the area of consumer goods sales must as a matter of policy be deemed closely linked with section 2-302, N.J.S. 12A:2-302, which authorizes a court to refuse to enforce any clause in a contract of sale which it finds is unconscionable. We see in the enactment of these two sections of the Code an intention to leave in the hands of the courts the continued application of common law principles in deciding in consumer goods cases whether such waiver clauses as the one imposed on Owen in this case are so one-sided as to be contrary to public policy. Cf. Williams v. Walker-Thomas Furniture Co., 121 U.S. App. D.C. 315, 350 F.2d. 445, 448-449 (1965). For reasons already expressed, we hold that they are so opposed to such policy as to require condemnation. [At 125]
Although it cannot be said as a matter of law that this contract was unconscionable at the time it was made, decisions under N.J.S.A. 12A:2-302 are instructive in determining the extent of the obligation of "good faith" imposed by N.J.S.A. 12A:1-203. While the unconscionability referred to in Section 2-302 may be conduct worse in some degree than the lack of good faith prohibited by section 1-203, both impose the same basic obligations of fair dealing in commercial transactions. The obligation is especially imperative where one party is at a disadvantage, as was defendant here. Unico, supra.
In Toker v. Perl, 103 N.J. Super. 500 (Law Div. 1968), the court, on the authority of section 2-302, refused to enforce a contract because the price was "exhorbitant," aff'd 108 N.J. Super. 129 (App. Div. 1970) for other reasons without expressing any opinion as to the application of Section 2-302, Toker v. Westerman, 113 N.J. Super. 452 (Cty. D. Ct. 1970), reiterates the ruling in Toker v. Perl. In Williams *380 v. Walker-Thomas Furniture Company, 121 U.S. App. D.C. 315, 350 F.2d 445 (D.C. Cir.1965), a contract with held unconscionable and unenforceable because default as to any purchase entitled the seller to repossess any item sold to same buyer. In Jefferson Credit Corp. v. Marcano, 60 Misc.2d 138, 302 N.Y.S.2d 390 (N.Y. Cty. Civil Ct. 1969), the contract was unenforceable because it contained waiver of warranties and defects in car. In Frostifresh Corp. v. Reynoso, 52 Misc.2d 26, 274 N.Y.S.2d 757 (D. Ct. 1966), rev. on other grounds, 54 Misc.2d 119, 281 N.Y.S.2d 964 (Sup. Ct. 1967), a contract for the sale of a freezer was not enforced because of excessive price. In American Home Improvement Inc. v. MacIver, 105 N.H. 435, 201 A.2d 886 (Sup. Ct. 1964), unconscionability was one reason for refusing to enforce a contract.
Section 1-203 was the basis of decision in T & W Ice Cream Inc. v. Carriage Barn, Inc. 107 N.J. Super. 328 (Cty. Ct. 1968), where it was construed to require notice to secondary endorsers of a private sale under chapter 9 of the Code.
Here when defendant buyer made his tender of $900, the seller would have been completely secure in returning the automobile and retaining a lien for the balance. The payment would far have exceeded the defaulted installments. Only the acceleration provision gave the finance company a pretext for refusing the offer. On the application of general equitable principles outlined above, defendant should have been permitted to reinstate the contract. Additionally, by its own terms, the acceleration provision did not operate automatically, but at the seller's option. The Seller's exercise of the option was not in good faith, and in violation of N.J.S. 12A:1-203.
Had these issues been raised prior to the sale of the security, the finance company could have been required to accept the $900, the car returned to the buyer, and both parties would have received the substance of their bargain. But *381 the transaction cannot be reconstituted. Had the finance company accepted the money offered by defendant almost certainly it would have suffered no loss. Instead of doing so it conducted a sale at which the car was sold for $275. Nor would defendant have lost his car. To require him now to pay a deficiency amounting to almost as much as the sum he offered to pay would indeed add insult to injury. Even if defendant is held to be indebted in the sum of $280.71, the difference between $1180.71 and the tendered $900, plaintiff should credit against that balance the $275 realized by sale of the car.
In sum, the equitable solution is to leave the parties in their present positions. Compare the disposition in Toker v. Westerman, supra. There will, therefore, be a judgment for defendant.