*In re* APPLICATION OF NICHOLAS BICKEL.

(No. 57703; ▮▮▮▮▮▮▮▮

First District (4th Division)—September 26, 1973.

Pauker & Griffith, of Chicago, (James D. Griffith, of counsel,) for respondents Ronald J. Mrofka and Jean E. Mrofka.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago, (Ira S. Kolb and Narcisse A. Brown, of counsel,) for petitioner-appellee First Commercial Bank.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Ronald and Jean Mrofka, husband and wife, were beneficial owners of their Lincolnwood property, title to which was in the American National Bank and Trust Company of Chicago (hereinafter called "Ambatco"), land trust No. 24256.

On March 6, 1970, the First Commercial Bank (hereinafter referred to as "First") loaned Mrofka $75,000 to buy one-half of the stock of Northwest Auto Co., Inc. (hereinafter known as "Northwest"). "First" made three loans totaling $100,000 to "Northwest". One of these loans was guaranteed by Jean Mrofka and all three by Ronald Mrofka. Defaults occurred on all the loans. In addition to the guarantees by the Mrofkas,

an assignment of "Northwest's" 1970 accounts receivable or dealer holdback from General Motors Corporation in the sum of $67,117.92 was given as additional collateral for said loans.

Subsequent to the defaults "First" served notice that it would sell the collateral at public auction on April 16, 1972. "First's" agent conducted the auction. The following properties were sold to "First" itself except one:

(1) The Campbell residence in Morton Grove, Illinois.

(2) The parking lot at 4745 N. Pulaski, Chicago, Illinois.

(3) The residence at 6741 N. Sauganash, Lincolnwood, Illinois.

(4) The seven acres on Green Bay Road in Lake County, Illinois.

Subsequent to the sale of the Lincolnwood property, "First" caused a deed to be issued to its nominee and from the nominee to itself as trustee. "First" neglected to obtain the Owner's Duplicate Certificate of Title for the Lincolnwood property. When the Registrar of Titles refused to accept the deeds, suit was brought by "First" seeking a judicial finding that it had title to the real estate and an order to the Registrar of Titles to register the deeds without the production of the Owner's Duplicate Certificate of Title which Mrofkas refused to surrender.

On March 30, 1970, a decree was entered granting "First's" request and directing the Registrar of Titles, without surrender of the Owner's Duplicate Certificate of Title, to cancel same, to register the deeds tendered by "First" and issue a Certificate of Title. The respondents, Ronald and Jean Mrofka appealed.

Respondents claim that the failure of "First" to file a financing statement for the $67,117.92 account receivable pursuant to the Uniform Commercial Code released Mrofkas from their guarantee; made the auction commercially unreasonable; that the decision of the trial court should be reversed and remanded; and that a new judicial sale ordered.

Section 9—302 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 9—302) provides:

"(1) A financing statement must be filed to perfect all security interests except the following:

(e) An assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor;"

■■ Respondents fail to notice the language of the guarantee section of the note they signed which provides:

"No renewal or extension of said Note, no release or surrender of any security for said Note or this Guarantee, no release of any

person, primarily or secondarily liable on said Note (including any maker, indorser or guarantor), no delay in the enforcement of payment of said Note or this Guarantee, and no delay or omission in exercising any right or power under said Note or this Guarantee, shall affect the liability of any of the undersigned hereunder."

This provision in the note excuses the failure of the petitioner to perfect a security interest.

In *Barrett v. Shanks*, 382 Ill. 434, 47 N.E.2d 481, it was claimed that the failure of the bank to collect and apply accounts receivable assigned as collateral, discharged a guarantor of the debt to the extent that the guarantor was damaged by the failure. The Illinois Supreme Court held: "The terms of the contract of guaranty excused the bank from the duty of collecting and applying the proceeds of the collateral to the payment of the note. These terms are clear and unambiguous and there is nothing for the courts to construe." In the same opinion the Court added: "* * * the provision of the contract of guarantee must be given the effect of excusing the bank from diligence in reference to the collection and application of the accounts receivable."

We reach the same conclusion here as a result of the language of the note involved herein that "no delay or omission in exercising any right or power under said note shall affect the liability of the undersigned hereunder."

Respondents also claim on appeal that the sale of collateral was not held in a "commercially reasonable" manner in every respect. They claim that due to misdescription of the real estate involved, the notice given by the petitioner was a nullity. They also claim that while a discrepancy between a price received at a sale and fair market value is not alone sufficient for a determination of unreasonableness, such a discrepancy if substantial, is relevant to a determination of whether a challenged sale was commercially reasonable.

■■ We note that the property in question had an equity value of approximately $52,000 and was sold for $35,000 or 67%. As stated in *Horney v. Hayes*, 11 Ill.2d 178, 142 N.E.2d 94 at 185:

"It has long been recognized that property does not bring its full value at forced sales, and that price depends on many circumstances from which the debtor must expect to suffer a loss."

■■ We must also conclude that mere inadequacy of price in the absence of fraud, mistaken or illegal practices does not vitiate such a sale.

Section 9—507(2) of the Uniform Commercial Code provides: "The fact that a better price could have been obtained by a sale at a different

time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner."

Respondents do not claim that they were in ignorance as to what was transpiring. They did nothing prior to, or at the sale, with reference to the method, manner, time, place or terms of sale. They were represented by counsel at the sale who made no objections.

On the basis of the record before us, the decision of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.