531 P.2d 607

Steven G. RIDLEY and Michael G. Ridley, and other members of the class of persons described herein, Plaintiffs-Appellees,

v.

FIRST NATIONAL BANK IN ALBUQUERQUE, a National banking association, Defendant-Appellant,

and

Art Janpol Volkswagen, Inc., Defendant.

No. 1221.

Court of Appeals of New Mexico.

Dec. 24, 1974.

Certiorari Denied Jan. 30, 1975.

Duane C. Gilkey, Gene C. Walton, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellant.

Tandy L. Hunt, Turpen, Hunt & Booth, Albuquerque, for plaintiffs-appellees.

## OPINION

LOPEZ, Judge.

This is an interlocutory appeal from an order of the district court pursuant to § 21–10–3, N.M.S.A.1953 (Repl.Vol. 4, Supp. 1973).

The plaintiffs individually, and as representatives of a class of persons similarly situated, filed suit in the district court for damages against the defendants for the wrongful resale of repossessed motor vehicles. The trial court issued an order declaring that the suit proceed as a class action. From this order the defendants appeal. We reverse.

The issues presented are whether the plaintiffs have sustained their burden of proof to show the following elements: (1) common question of law; (2) common question of fact; (3) adequate representation by the plaintiff of the members of the alleged class; and (4) policy justifications for a class action suit.

Plaintiffs purchased new automobiles from the defendant Art Janpol and New Mexico Installment Contracts were assigned to the defendant, First National Bank. The bank repossessed the respective automobiles. In each case, the bank immediately mailed to the plaintiff a notification that unless other arrangements were made, the motor vehicle in question would be sold after five days. Pursuant to the bank's right to compel the dealer to repurchase the collateral when a debtor would default on a new installment contract, the cars were transferred to Art Janpol. After about 20 days, each car was transferred to a new buyer.

The district court found that plaintiffs are members of a definable class of persons, that there are common questions of fact and law, that the claims of plaintiffs are representative of claims of other members of the class and that plaintiffs will adequately prosecute the action against defendants and protect the interests of the other members of the class, and that the action is therefore a proper class action.

The defendants contest each of these findings and claim error in that the court did not make findings favorable to defendants on all of these points. This is a question of first impression in the appellate courts of New Mexico. The appeal involves § 21–1–1(23)(a), N.M.S.A.1953 (Repl.Vol. 4), which reads in pertinent part as follows:

*"Rule 23. Class actions.*

"(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one [1] or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the

character of the right sought to be enforced for or against the class is

" . . .

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

 A class action suit does not exist just because it is so designated by the pleadings. Rather, the plaintiffs must prove that all the elements required to make the case a class action are present. Rossin v. Southern Union Gas Company, 472 F.2d 707 (10th Cir. 1973). Such elements necessarily include the presence of common questions of fact or law and adequate representation of the whole class. Section 21–1–1(23)(a), supra.

*Questions of fact and law*

 The district court found that "there are common questions of fact and law, to-wit: The legal sufficiency and propriety of the notice of repossession and resale, the commercial reasonableness of the resale of the vehicles, and whether a public or private sale is appropriate."

The defendants argue that these are not common questions of fact and law affecting the rights of the alleged class ("All persons who have had their motor vehicles repossessed by either Defendant and resold at a private sale, or sold without being given notice of either the time or the place of the sale, or without being given an opportunity to repurchase at the sale, or whose vehicles were resold without any notice, or were only given the 'form' notice by Defendant FIRST NATIONAL BANK IN ALBUQUERQUE, all during that period of time since December 21, 1967 to the date of the entry of this Order.").

Defendants state that the one factual similarity, the use by the bank of five-day form notices, is not a common question of fact because the bank admits the form notice. The bank alleges that the controlling questions of reasonable notification and commercial reasonableness of resale of collateral are unsuited for treatment as a class action because there are material variations in each individual repossession and resale as to the circumstances under which notice to the debtor was sent and received, as to the actions taken by the debtors upon receiving the notice, as to the method, manner and terms of resale which may or may not call for the payment of any surplus to the debtor, and as to a multitude of defenses applicable to some members of the alleged class and not to others.

The plaintiffs argue that the bank's failure to give proper notice of the disposition of repossessed automobiles and failure to account to plaintiffs for any surplus pertain to the question of law and fact common to the class.

We shall first discuss whether *reasonable notification*, as that term is used in the § 50A–9–504(3), N.M.S.A.1953 (Repl. Vol. 8, pt. 1) is a question suitable for a class action determination. Section 50A–1–204(2), N.M.S.A.1953 (Repl.Vol. 8, pt. 1) defines *reasonable time* as follows:

"What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action."

It is our opinion that the uniform commercial code calls for a case by case determination of *reasonable notification*.

Referring to the two plaintiffs in this case, there is a question of fact as to notice. One plaintiff alleges that he received the bank's notice late due to a holiday, after the mailing of the five-day notice, and the other plaintiff claims to have never received the notice at all. One can only imagine how many questions of fact there would be as to notice among the hundreds of purchasers whose automobiles may have been repossessed.

The uniform commercial code does not specify the number of days within which notice must be given to the purchaser. While the five-day notice might be applicable to purchasers within the city where the bank is located, it might be unreasonable as to purchasers living 200 miles away, even though within the state of New Mexico. What is reasonable to one purchaser, might

not be reasonable to another. This issue requires a determination of fact by the jury or the court. The courts have consistently treated the uniform commercial code requirement of *reasonable notification* as a question of fact to be determined only after considering all the facts and circumstances of the individual case. Baber v. Williams Ford Co., 239 Ark. 1054, 396 S. W.2d 302 (1965); see Beneficial Finance Co. of Black Hawk County v. Reed, 212 N.W.2d 454 (Iowa 1973); Prairie Vista, Inc., v. Casella, 12 Ill.App.3d 34, 297 N.E. 2d 385 (1973); Tauber v. Johnson, 8 Ill. App.3d 789, 291 N.E.2d 180 (1972); United States v. Pirnie, 339 F.Supp. 702 (D. Neb.1972), affirmed 472 F.2d 712 (8th Cir. 1973).

We next consider the meaning of *commercially reasonable* within § 50A–9–504(3), supra, to require a factual determination in light of all the circumstances of any particular case. This phrase raises questions in regard to the variance in values of cars from time to time and in market conditions. Other elements which may be considered are preparation for resale, attorneys fees, expenses of retaking, holding and selling, and the method, manner, time and place of resale. Crosby v. Basin Motor Company, 83 N.M. 77, 488 P.2d 127 (Ct.App.1971); see Beneficial Finance Co. of Black Hawk County v. Reed, supra. Whether there should be a private or public sale is also not a common question of law or fact. We hold that these questions require factual determinations.

Now we go to plaintiffs' argument that a failure to account for any surplus raises a question of law or fact common to the alleged class. The bank alleges that one of the named plaintiffs received an accounting from the bank of the proceeds of the sale. The same elements which raise an issue of fact with respect to *commercial reasonableness* apply here.

According to § 50A–9–504(2), N.M.S.A. 1953 (Repl.Vol. 8, pt. 1), the purchaser or debtors are entitled to an accounting only if there is a surplus after paying reasonable attorneys fees and reasonable expenses of retaking, holding, preparing for sale, selling the collateral and satisfying the indebtedness cured by the collateral paid. If there is no surplus, the debtor or the purchaser would be entitled to no accounting. All these elements require that there be a ·factual determination as to each potential purchaser on the facts of each individual case as to whether there is a surplus. Whiteman v. Degnan Chevrolet, Inc., 8 U. C.C.Rep. 262 (Pa.1970).

We hold that as to the entitlement of a purchaser to an accounting, there must be a factual determination as to each individual case.

*Adequate representation of the class*

Finally we consider whether in this case the plaintiffs could fairly insure the adequate representation of the alleged class. Our answer is in the negative. The prerequisite to maintenance in a class action under § 21–1–1(23)(a), supra, requires the plaintiffs to make an affirmative showing that they would assure adequate representation of all the members constituting the class. The uniform commercial code section applicable to repossession of an automobile gives a right to the bank to counterclaim. Charley v. Rico Motor Co., 82 N.M. 290, 480 P.2d 404 (Ct.App.1971). The form of these counterclaims will vary according to the individual purchaser within the alleged class. Therefore, we hold that there is no common approach by which the plaintiffs could adequately represent all the members of the class, since there is no way of knowing what the possible counterclaims would require by way of any defenses.

We hold that there are uncommon questions of law and fact and that the plaintiffs cannot adequately represent all the members of the alleged class. We think that to allow this suit to proceed as a class action would be unjust to the other members of the alleged class and would deny them their day in court. Covert v. Nashville, Chattanooga & St. Louis Railway Co.,

186 Tenn. 142, 208 S.W.2d 1008, 1 A.L.R.2d 154 (1948).

This cause is reversed with instructions to the district court to enter the case as consolidated and not as a class action.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

The sole issue on appeal is whether the trial judge erred in ordering this suit to proceed as a class action pursuant to Rule 23(a)(3) of the Rules of Civil Procedure [§ 21-1-1(23)(a)(3), N.M.S.A.1953 (Repl. Vol. 4)]. The overwhelming weight of authority supports the trial judge's order.

There is no case law on the New Mexico class action statute or on the precise issues involved in § 50A-9-504, N.M.S.A.1953 (Repl.Vol. 8, pt. 1, 1962) of the Uniform Commercial Code. It is necessary to analyze in some detail the way other jurisdictions have developed the law on the issues raised here.

### I. The New Mexico Class Action Statute

The present New Mexico Rule 23 was derived from and identical with the old federal Rule 23, before the latter rule was amended in 1966.

Rule 23(a) requires that a suit must meet the following requirements to proceed as a class action:

(a) The persons constituting the class must be so numerous as to make it impracticable to bring them all before the court;

(b) The plaintiffs must "fairly insure the adequate representation of all".

To proceed as a class action under Rule 23(a) *Subdivision (3)* in addition to the above two requirements, the action must meet the following three:

(c) The character of the right sought to be enforced must be "several";

(d) There must be a common question of law or fact affecting the several rights; and

(e) A common relief must be sought.

Rule 23(a)(3). See, also, Moore, Federal Practice, 3B, § 23.10(3).

The trial court found:

. . . Plaintiffs are members of a definable class of persons, to wit: All persons who have had their motor vehicles repossessed by either Defendant and resold at a private sale, or sold without being given notice of either the time or the place of the sale, or without being given an opportunity to re-purchase at the sale, or whose vehicles were re-sold without any notice, or were only given the "form" notice by Defendant FIRST NATIONAL BANK IN ALBUQUERQUE, all during that period of time since December 21, 1967 to the date of the entry of this Order.

The trial court found that plaintiffs' claim on behalf of this class meets the criteria for a Subdivision 3 class action [Rule 23(a)(3)].

### II. Facts

The Bank's standard automobile installment loan procedures, which pertain to all members of the class are as follows:

Prospective car buyers, wishing to buy on time, negotiate an installment loan contract with the Bank. According to the contract, if the debtor fails to meet the payment schedule, the Bank can repossess the car. The Bank contacts a delinquent debtor to see if he will bring his payments up to date within a specified period, generally, before the next payment is due. If he will not, the Bank sends men out to repossess the car. After repossession the Bank can resell the car. It sends a written notice to the debtor that the car will be resold within five days, if the debtor has not acted to reclaim it, and the proceeds of the sale will be applied to his account.

If the prospective car buyer has been referred to the Bank by a car dealer, as in

this case, a repurchase agreement between the Bank and the car dealer is made part of the installment contract. If the debtor has not reclaimed his car within five days, the car dealer, on demand by the Bank, repurchases the automobile from the Bank for the amount outstanding on the installment contract (principal balance plus earned interest). The price depends to some extent on cost of repairs, and any expenses incurred by the Bank in repossessing the car.

If the debtor goes directly to the Bank for an auto loan, the Bank arranges for a private sale of the automobile.

The Bank uses a standard form installment contract, which includes on page two, if applicable, the provision for resale to the car dealer for the amount of the outstanding debt; and it uses a standard letter to give five-day notice of resale.

### III. The Bank's Position

The Bank contends that this suit should not proceed as a class action because: 1) there is no common question of law or fact; and 2) the named plaintiffs cannot insure adequate representation to all class members. The Bank also argues that there are policy reasons for not allowing this suit to proceed as a class action.

The Bank's contentions on these issues are simply incorrect.

### IV. The statutory requirement that there be a common question of law or fact is met in the instant case

The lawfulness of the Bank's procedures for disposing of repossessed collateral is governed by § 50A–9–504 of the Uniform Commercial Code and related sections that help to interpret it. The standards to govern the methods for disposition of collateral are set by *Subdivision (3)* of § 9–504. Here, "disposition of the collateral" is either by resale to the car dealer for the amount outstanding on the installment contract, or by private sale.

### A. How does the "common question of law or fact" requirement affect membership in the class?

"[Rule 23(a)(3) does] not require that all the members of the class be identically situated, if there [are] substantial questions of either law or fact common to all." Moore, supra, § 23.10[5], at 23–2703. A class action is maintainable even if some issues bearing on the right to recovery of individual class members must be litigated separately, as long as the common issues justify maintenance of the class action. Daar v. Yellow Cab Co., 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 (1967). If plaintiffs allege that members of the class were damaged "in the same way, for the same reason, in the same manner," the action is maintainable, even if different members of the class were damaged in different amounts. Kainz v. Anheuser-Busch, Inc., 194 F.2d 737, 743 (7th Cir. 1952), cert. denied, 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638.

### B. Common questions of law or fact exist regarding the "reasonable notification" requirement

Section 9–504(3) requires that:

reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . .

The Bank sends out a letter of notification of resale on all repossessions stating that within five days of the date on the letter the car will be sold, and the proceeds of the sale will be applied to the debtor's account. The Bank contends that whether such notification is "reasonable" must be determined on an individual basis, and it depends on the particular facts of each debtor's case. Whether the Bank's letter constitutes "reasonable notification", regardless of the facts of an individual debtor's situation, is a common question of law or fact.

First, is five days too short a period, as a matter of law? It may be. The probability of a holiday or weekend intervening, or a slight delay in the mails, with the result that the debtor finds himself with only a day or two, or perhaps no time at all, in which to try to gather up funds to get back his car can be unreasonable as a matter of law. W. Davenport, Default, Enforcement and Remedies Under Revised Article 9 of the Uniform Commercial Code, 7 Val.L. Rev. 265, 290 (1973). In any event it is a common question for the class.

The Bank contends that its five-day notice is sufficient as a matter of law. However, that is a defense to be raised *during* the action, and does *not bar maintenance of the suit as a class action.* The court shall decide whether five days or less is too short a period to fulfill the statutory requirement of "reasonable notification" regardless of the circumstances of individual debtors.

There is a second common issue of law or fact with regard to the Bank's standard notification letter. This issue arises when the Bank resells to the car dealer for the amount outstanding on the installment contract because the Bank gives notification only of its resale back to the car dealer. No notification is given of the car dealer's subsequent sale of the car. One court, dealing with a sale by a finance company back to the car dealer for the amount outstanding on the debtor's installment contract, held that such sale was merely a *transfer of collateral,* and not a "disposition", as contemplated in § 9–504(3). Therefore, notification of the transfer to the dealer, *but not of the subsequent sale of the car, by the dealer to a new buyer,* did not comply with a "reasonable notification" requirement of § 9–504(3). Jefferson Credit Corp. v. Marcano, 60 Misc.2d 138, 302 N.Y.S.2d 390 (Civ.Ct.N.Y. County, 1969).

Two common issues of law or fact can be raised to question whether the Bank's standard notification letter constitutes "reasonable notification" as required by §

9–504(3). It can be said there is a single common question with two grounds on which to raise it: Does the Bank's standard procedure for notifying the debtor of resale of the collateral constitute "reasonable notification" as required by the statute? It is not our duty to decide who should prevail on the question of "reasonable notification". That should be decided at trial. Similarly, the trial court must decide whether to submit the question of "reasonable notification" to the jury or to decide it as a matter of law.

C. *A common question of law or fact exists regarding the "commercially reasonable" requirement*

The authors of § 9–504 in the U.C.C. created rigid standards to govern disposition of the collateral. The sole requirement is that the disposition be "commercially reasonable".

(3) Disposition of the collateral may be by public or private proceedings . . . . Sale or other disposition may be . . . at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. * * * § 50A–9–504(3); and see Official Comment 1 to § 9–504 in the Uniform Commercial Code. Uniform Commercial Code, Uniform Laws Annotated, v. 3 (West Pub. Co., Master Ed. 1968).

Section 50A–9–507(2) provides guidelines for deciding whether a given method of disposition is "commercially reasonable":

(1) The fact that a better price might be obtained by some other method of disposition does not, of itself, mean that the disposition is not commercially reasonable.

(2) The following are commercially reasonable types of disposition:

(a) Sale "in the usual manner in any recognized market";

(b) Sale "at the price current in such market at the time of his sale";

(c) Sale "in conformity with reasonable commercial practices among dealers in the type of property sold".

The following authorities help to interpret the meaning of "commercially reasonable", and to apply the three types of disposition named in § 9–507(2) to real-life situations. U.C.C. § 2–706, Official Comment 3; U.C.C. § 2–724; Comment: Commercial Reasonableness Under the Uniform Commercial Code, 33 Tenn.L.Rev. 211, esp. 218–219; Davenport, supra, at 283–287; W. Hogan, The Secured Party and Default Proceedings Under the UCC, 47 Minn.L.Rev. 205 (1962).

A question exists as to the commercial reasonableness of the disposition in the case of debtors, like the Ridleys, whose repossessed cars were resold to the car dealer for the amount outstanding on the installment contract, pursuant to a repurchase agreement in the contract.

Three decisions in the country are decisive on this question. In each of these cases, the court held that this method of disposition was not commercially reasonable, because it was not a reasonable method for obtaining a good price for the car. Community Management Asso. of Colorado Springs, Inc. v. Tousley, 505 P.2d 1314 (Colo.App.1973); Jefferson Credit Corp. v. Marcano, supra; Rangel v. Bock Motor Co., 437 S.W.2d 329 (Tex.Civ.App.1969). See, also, P. Loiseaux, Default Proceedings Under the Texas Uniform Commercial Code, 44 Tex.L.Rev. 702, 709–710 (1966).

To understand these decisions, we must look to the rationale that underlies the "commercially reasonable" standard. The creditor has a duty to protect the debtor's interest in the collateral when the creditor disposes of the collateral. Several courts and commentators on Article Nine have stated that the creditor has a duty to try to realize as much money as possible from the disposition of the collateral.

> The policy of Article 9 is to provide a simple, efficient, and flexible tool to produce the maximum amount from the disposition of the collateral. Hogan, supra, 47 Minn.L.Rev. at 219.

The purpose of the Uniform Commercial Code is the protection of both the creditor and the debtor. . . . The duty of the secured party [in disposing of collateral pursuant to § 9–504(3)] was to obtain the best possible price it could obtain for the collateral for the benefit of the debtor. Vic Hansen and Sons, Inc. v. Crowley, 57 Wis.2d 106, 203 N.W.2d 728, 731 (1973).

> [T]he policy of the law . . . requires a repossessing seller to resell at the best obtainable price on commercially reasonable terms. [Citations omitted] This policy tends to protect a defaulting buyer from any greater loss by way of deficiency judgment than the market reasonably justifies and thereby promotes an orderly marketing of repossessed goods. . . . Elster's Sales v. El Bodrero Hotel, Inc., 250 Cal.App.2d 258, 58 Cal.Rptr. 492 (Ct.App.2nd Dist. 1967).

> Probably the most important factor in the disposal of the collateral . . . from the secured party's viewpoint, is the recovery of his investment. . . . This might tend to influence the secured party into making a fast deal and temporarily forget his duty to the debtor . . . in his desire to collect his debt. If this occurred, the secured party would probably be liable since the majority of courts imposed a fiduciary responsibility upon the secured party before the adoption of the Commercial Code, and there is no reason to assume that this obligation has been removed. Comment, supra, 33 Tenn.L.Rev. at 223.

In accord with § 9–507(2), courts have held that the fact that a better price might have been obtained for the collateral does not, *in itself,* mean that the disposition was not "commercially reasonable". In re Stanley Engineering Corp., 164 F.2d 316 (3d Cir. 1947), cert. denied sub nom., Root v. Galman, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948); Goodin v. Farmers

Tractor and Equipment Co., 458 S.W.2d 419 (Ark.1970); Application of Bickel, 14 Ill.App.3d 813, 303 N.E.2d 541 (1973).

However, the fact that the creditor did not *use every reasonable means to obtain the best possible price* means that the disposition was *not* "commercially reasonable". Associates Financial Services Corp., 269 N.C. 563, 153 S.E.2d 7 (1967); Elster's Sales v. El Bodrero Hotel, Inc., supra; Vic Hansen and Sons, Inc. v. Crowley, supra; Dynalectron Corp. v. Jack Richards Aircraft Co., 337 F.Supp. 659 (W.D.Okl.1972); A to Z Rental, Inc. v. Wilson, 413 F.2d 899 (10th Cir. 1969). See Hogan, supra, 47 Minn.L.Rev. at 219–220.

Inadequacy of price is relevant in determining commercial reasonableness. First Nat. Bank of Bellevue v. Rose, 188 Neb. 362, 196 N.W.2d 507 (1972). It is necessary for the seller to establish that every aspect of the sale is commercially reasonable, including adequacy of price. Vic Hansen and Sons, Inc. v. Crowley, supra. Inadequacy of price, combined with other circumstances, violates the standard of commercial reasonableness in the Code. Warren Co. v. Little River Farms, Inc., 125 Ga.App. 332, 187 S.E.2d 568 (1972). Inadequacy of price in resale of repossessed auto is unconscionable and will not be upheld on equitable grounds. Urdang v. Muse, 114 N.J.Super. 372, 276 A.2d 397 (D.C.Essex Cnty.1971).

In defending its practice of selling repossessed cars back to the car dealer pursuant to a repurchase agreement, the Bank refers to U.C.C. § 9–507(2). It states that a sale of repossessed collateral conducted "in conformity with reasonable commercial practices among dealers in the type of property sold" is a commercially reasonable one. Why the Bank cites this section in support of their practice escapes me, since sale of a used car to another car dealer for a price that is unrelated to the market price of the car is surely not a reasonable commercial practice among car dealers.

Appellant Bank refers also to Official Comment 2 to § 9–507, which states:

One recognized method of disposing of repossessed collateral is for the secured party to sell the collateral to or through a dealer—a method which in the long run *may realize better average returns* since the secured party does not usually maintain his own facilities for making such sales. Such a method of sale, *fairly conducted,* is recognized as commercially reasonable. . . . [Emphasis added.]

In light of the emphasized portion of the Official Comment and the three acceptable types of disposition set out in the text of § 9–507(2), it is apparent that the meaning of this Comment is that resale "to or through a dealer" is acceptable, *if it is done in a way that is calculated to realize a good price, something akin to the "price current in such market at the time of his sale* [§ 9–507(2)]". In the instant case, the record is clear that when the Bank resells to a car dealer, pursuant to a repurchase agreement, the Bank makes no attempt to obtain a good price for the repossessed car. The Bank simply recoups its own interest in the collateral by selling for the outstanding debt on the installment contract, be that $1,000, or $100.

The commercial reasonableness of the Bank's practice of selling a repossessed car back to the car dealer for the outstanding debt on the installment contract is a question of law or fact common to all whose repossessed cars have been disposed of in this fashion. If proved to be commercially unreasonable, the Bank's practice would damage those individuals "in the same way, for the same reason, in the same manner, but in a different amount." Kainz v. Anheuser-Busch, Inc., supra.

*V. The statutory requirement that plaintiffs must "fairly insure the adequate representation of all [members of the class]" does not bar prosecution of this suit as a class action.*

The Bank contends that Rule 23(a) requires plaintiffs *to make an affirmative showing* that they will fairly insure adequate representation of all members of the class. It cites no authority for this conten-

tion. The Bank further contends that plaintiffs cannot adequately represent the interests of all members of the class because facts vary among different members, and because the Bank can assert different counterclaims as to different members of the class.

These contentions are unfounded for four reasons.

(1) The trial judge found that this suit meets the requirements for a class action under Rule 23(a), Subd. (3). In this type of class action, adequacy of representation is not required. The reason is that this type of class action is, in actuality, equivalent to a permissive joinder device; and judgment will only be res judicata as to plaintiffs who were actually joined. Members who were not actually joined will not be legally affected, even though they have an interest in the outcome of the suit. Moore, supra, § 23.10(3)[1], at 23–2601. Carroll v. American Federation of Musicians of U.S. & Can., 372 F.2d 155 (2nd Cir. 1967), vacated on other grounds, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968); Kainz v. Anheuser-Busch, Inc., supra; Oppenheimer v. F. J. Young and Co., Inc., 144 F.2d 387 (2nd Cir. 1944); York v. Guaranty Trust Co. of New York, 143 F.2d 503 (2nd Cir. 1944), reversed on other grounds, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). See G. W. Foster, Jr., The Status of Class Action Litigation, Research Contributions of the American Bar Foundation (No. 4, 1974), at 21.

(2) For the common issues of law or fact that have been framed above, facts and defenses would be essentially the same for all members of the class. Does five day written notification constitute "reasonable notification"? In a repurchase agreement between the Bank and a car dealer, does notification of resale to the car dealer for the amount outstanding on the installment contract constitute "reasonable notification" of the "disposition" of the collateral; and is resale to the dealer for the amount outstanding on the contract

a "commercially reasonable" disposition? These questions are framed in terms of the Bank's standard practices, so that a judge or jury must decide whether such resale and notification are reasonable *standard practices* for an auto installment contract creditor.

The fact that related issues require separate adjudication for different class members, according to differences in the facts of their individual situations, does not bar maintenance of this suit as a class action. The California Supreme Court has stated:

> It may be, of course, that the trial court will determine in subsequent proceedings that some of the matters bearing on the right to recovery require separate proof by each class member. If this should occur, *the applicable rule as stated in Daar is that the maintenance of the suit as a class action is not precluded so long as the issues which may be jointly tried, when compared to those requiring separate adjudication, justify the maintenance of the suit as a class action.* If the questions which must be litigated separately are not numerous or substantial, it would be advantageous to the parties and the judicial system to allow the named plaintiffs to sue on behalf of the class. Vasquez v. Superior Court of San Joaquin County, 4 Cal.3d 800, 94 Cal. Rptr. 796, 805–806, 484 P.2d 964, 973–974, 53 A.L.R.3d 513, 525 (1971). [Emphasis added.]

See, also, Daar v. Yellow Cab Co., 67 Cal. 2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 (1967).

(3) This suit can proceed as a class action under Rule 23(a)(3) even though the fact situations for different members of the class are not identical. American Jurisprudence 2d states the rules which the courts have applied:

> [A Rule 23(a)(3) type class action] is maintainable where a common determination is desired which affects rights of the members of the class which are

several in character even though judgments will be several; and it is not necessary that all the members of the class be identically situated, if there are substantial questions either of law or fact common to all. The mere fact that in defense of the action different factual situations may arise with respect to the defenses as to different plaintiffs (as in the case of laches, estoppel, etc.) does not derogate from the fact that the affirmative cause of action itself has the community of interest and of questions of law or fact which justify the class action concept.

59 Am.Jur.2d, Parties § 62, at 436 [footnotes omitted].

This statement of the law refutes the Bank's contention that its different affirmative defenses as to different members of the class bars prosecution of this suit as a class action. It names as examples of defenses that would not bar a class action the same defenses which the Bank suggests it might raise in the instant suit. On the rules of law contained in the quotation from Am.Jur., see Echols v. Star Loan Co., 274 So.2d 51 (Ala.1973); Kainz v. Anheuser-Busch, Inc., supra; Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964); Puget Sound Alumni of Kappa Sigma v. City of Seattle, 70 Wash. 2d 222, 422 P.2d 799 (1967); Branch v. White, 99 N.J.Super. 295, 239 A.2d 665 (1968).

(4) Appellees claim that a decision as to adequacy of representation is within the trial judge's discretion. The only decisions that speak to this point are on their side. See, Hines v. Texas Telephone and Telegraph Co., 490 S.W.2d 953 (Tex.Civ.App. 1973). We agree. The trial court did not abuse its discretion.

## VI. Policy reasons favor allowing this suit to proceed in a class action.

The Bank makes five arguments on the grounds of policy, to support its contention that this suit should not be permitted to proceed as a class action. None of these arguments has merit.

The Bank states that Rule 23(a) gives the trial court discretionary authority to refuse to allow a class action, even if the suit meets the statutory criteria for a class action.

Here, the trial judge used his discretionary power, and found that the suit *should* proceed as a class action.

The Bank contends that one consideration in the use of discretionary authority is the interest of individual class members in individually controlling prosecution or defense of their own actions. The Bank argues that here such interest should be controlling because of the possibility of different defenses and counterclaims as to different members of the class.

The lack of significance of the possibility of different defenses for different class members has already been discussed. In this type of class action, no one need be joined who does not wish to join; and a decision will not be res judicata as to any member of the class unless he indicates that he wishes to be joined to the action. Here, the trial judge has ordered that plaintiffs give notice to all prospective members of the class, and they have indicated that they will comply, if the suit is permitted to proceed as a class action.

The Bank contends that § 50A–9–507(1), N.M.S.A.1953 (Repl. Vol. 8, pt. 1), prescribes a minimum recovery, and recovery by a class of a large size would be "unconscionable". The Bank suggests that the class may contain as many as 10,000 members. That is pure speculation. It is highly improbable that the number of individuals partaking in a judgment will equate that number, especially since notice must be sent to each prospective class member, who must then indicate his intent to join in the action in order to take part in a judgment. In any case, the Bank stands to lose no more in this class action than in a number of separate actions prosecuted by individual members of the class.

The Bank contends that a class action in this suit will hamper judicial efficiency, because the issues involved are "almost as numerous as the members of appellees' alleged class."

The common issues that exist in this case, that differences between the situations of individual class members should not prevent a class action under Rule 23(a)(3), have been amply discussed. If plaintiffs were to win a verdict *as individuals,* would it be more efficient to entertain 100, or 500, additional, separate lawsuits of the same type, against the Bank? From the point of view of court administration, surely a proper class action is the most efficient way to litigate the issues at hand.

Finally, the Bank argues that abuse of the class action rule may bring that rule into disrepute in New Mexico.

I agree. Here there has been no abuse. On the contrary, *not* to allow a class action seems to be in clear disregard of Rule 23(a)(3). Whether, in the future, there might be abuse of the class action rule is a matter of pure speculation. Thus far, class actions in New Mexico have been sparse.

*VII. Conclusion.*

Class action litigation is a vibrant and significant area of the law at this time. "Our legal remedies for group wrongs have not been wholly effective, and we are in motion now under heavy pressures to fashion improvements." American Bar Foundation research study on class action litigation, supra, at 28. We have no case law on the New Mexico class action statute. The closest New Mexico precedent deals with a prior statute. Pecos Val. Artesian Conservance Dist. v. Peters, 50 N.M. 165, 173 P.2d 490 (1945).

For these reasons, this case will have a critical impact on future attempts at litigation under § 21–1–1(23)(a). The overwhelming weight of authority on the issues raised here argues that the suit should be permitted to proceed as a class action. Not to allow a class action is to make a nullity of Rule 23(a)(3). The trial judge's order should be affirmed.