## ASSOCIATES CAPITAL SERVICES CORP.

v.

### Ronald L. RICCARDI.

### No. 5310.

United States District Court,
D. Rhode Island.

July 26, 1978.

Leo T. Connors, J. Mullaney, Providence, R.I., and Milton Bernstein, Providence, R.I., for plaintiff.

Sydney Resnick, Cranston, R.I., for defendant.

## OPINION

FRANCIS J. BOYLE, District Judge.

This is a diversity action in accord with 28 U.S.C. § 1332 brought by Plaintiff, Associates Capital Services Corp., against Defendant, Ronald L. Riccardi, for a deficiency judgment under the provisions of R.I. Gen. Laws § 6A–9–504 (Rhode Island counterpart to U.C.C. § 9–504).

Defendant, in 1972, entered into two (2) separate agreements for the lease-purchase of certain specialized electronics components in order to create a two-way communications system for motor vehicles traveling within or through the State of Rhode Island. Total rental payments due were $362,988. Security agreements were entered into with Motorola Communications and Electronics, Inc., with the communications equipment pledged as collateral. Plaintiff now holds the lease and security agreements by assignment.

In 1973, Defendant, after he made total rental payments of $17,149.40, defaulted under the terms of both lease agreements. Plaintiff made demand for the total outstanding rental balance then due in the amount of $344,838.60 and demanded return of the equipment in accord with the terms of the lease agreements. Plaintiff's demands were not satisfied by Defendant and Plaintiff applied to this Court for relief. This Court entered an Order of Delivery and a subsequent Order directing Defendant to disclose to Plaintiff the location of all leased equipment, whether or not in his possession. Plaintiff thereafter recovered possession of a substantial number of equipment components.

A portion of the recovered equipment was sold by a licensed auctioneer at a public auction on April 29, 1975. At a second public auction on July 29, 1976, additional pieces of equipment were sold. The total amount realized from both sales was $32,775. After crediting Plaintiff's account with an additional $875 for equipment recovered but not sold, Plaintiff claims an outstanding balance due of $325,045.27, including costs of repossession. The proceeds realized from the two sales, involving a substantial portion of the leased equipment are slightly less than eleven (11) percent of what is claimed on the debt; and, amounts to approximately nine (9) percent of the total rental payments originally specified in the lease agreements.

The collateral sold was unique equipment, a system of two-way communications components designed in part specifically for Defendant's particular needs. The equipment was compatible with Defendant's license frequencies and comprised a kind of system that was neither readily compatible nor interchangeable with any other system. Modification of some sort would have to be effected in order to make use of Defendant's equipment.

Despite the acknowledged uniqueness of Defendant's equipment, the only efforts to encourage bidding at both auction sales were through newspaper notice in the Prov-

idence Journal/Bulletin, a newspaper of general circulation within the State of Rhode Island. Such efforts consisted of a legal notice on April 25 and 26, and a display ad on April 27 and 28 for the April 29, 1975 sale; and a legal notice on July 27 and 28, and a display ad on July 26 and 27 for the July 29, 1976 sale. Mailing lists were not utilized to "feel out" potentially interested buyers. No advertising of any sort was placed with any trade journal or other electronics publications concerning either sale. Plaintiff may have sent "notices" two weeks before the sale to "individuals who had a possible interest in this equipment"; however, it does not appear that Plaintiff availed itself in any significant way of its industry contacts for purpose of publicizing or otherwise encouraging bidding at the auction sale of the collateral.[1]

Additionally, there was approximately a nine-month lag period before the time of the first public auction, during which Plaintiff held the bulk of the recovered collateral. This time span provided more than ample opportunity for Plaintiff to communicate to potential bidders and expose the nature of the collateral and its intended disposition. The equipment involved in this action is not equipment for which there is an available local public market. It comprises a unique communications system and requires appeal to specialized buyers within and without the State of Rhode Island.

In order for Plaintiff to succeed on its claim for a deficiency judgment, it must meet the burden of establishing by a preponderance of the evidence that the disposition of the collateral was "commercially reasonable" in every respect. *Dynalectron Corporation, Id.* at 662.

As provided in R.I. Gen. Laws § 6A–9–504(3):

> Disposition of the collateral may be by public or private proceedings and may be made by one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on

any terms but *every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . .* (Emphasis added.) Moreover, even though R.I. Gen. Laws § 6A–9–507(2) indicates that "[t]he fact that a better price could have been obtained . . . at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner," price is nonetheless a "term" of sale. *Associates Finance Co. v. Teske,* 190 Neb. 747, 212 N.W.2d 572 (1973).

■ The secured party was the successful bidder at the auction of collateral; there was only one other bid made; the number of bidders in attendance who had any real interest in the collateral were few; the efforts to encourage meaningful bidding were scant; and there is a substantial disparity between the price recovered on disposition ($32,775) and the deficiency sought ($325,045.27). Close judicial scrutiny must be given to the claim of commercial unreasonableness in these circumstances. Considering the aggregate of the circumstances, the Court finds as a fact that the disposition of the collateral in this action was not "commercially reasonable." *In re Zsa Zsa, Ltd.,* 352 F.Supp. 665 (S.D.N.Y.1972), *aff'd,* 475 F.2d 1393 (2d Cir. 1973).

A determination that the disposition of collateral was not made in a commercially reasonable manner does not dispose of the issue of whether the secured party is entitled to a deficiency judgment. In a recent opinion, *Rhode Island Hospital Trust National Bank v. National Health Foundation,* R.I., 384 A.2d 301 (1978), Justice Kelleher, dissenting, stated that the issue of a recovery of a deficiency judgment has not yet been decided in the State of Rhode Island. "The majority's conclusion forecloses any meaningful discussion of just what is the effect of a creditor's failure to make a commercially reasonable disposition of the

---

1. *See Liberty National Bank & Trust Company of Oklahoma City v. Acme Tool Division of the Rucker Company,* 540 F.2d 1375 (10th Cir. 1976); *Dynalectron Corporation v. Jack Richards Aircraft Co.,* 337 F.Supp. 659 (W.D.Okla. 1972).

collateral." *Rhode Island Hospital Trust National Bank, Id.* at 307 n. 2.

The jurisdictions that have considered this issue are divided in three distinct views. Some have adopted the view that compliance with § 9–504(3) is a condition precedent to a secured party's right to recover a deficiency judgment. *See Camden National Bank v. St. Clair,* 309 A.2d 329 (Me.1973) (notice requirement of 9–504(3) was condition precedent); *Dynalectron Corporation, supra* (commercial reasonableness of disposition a condition precedent); *Cf. Urdang v. Muse,* 114 N.J.Super. 372, 276 A.2d 397 (1971) (unconscionable conduct on part of secured party barring a deficiency judgment).

Other jurisdictions have followed the view that a secured party may recover a deficiency judgment subject to the debtor's right to recover damage shown to have been a proximate result of the secured party's wrongdoing under § 9–507. *Barbour v. United States,* 562 F.2d 19 (10th Cir. 1977); *Jones v. Morgan,* 58 Mich.App. 455, 228 N.W.2d 419 (1975).

Other jurisdictions have adopted a third view, under which a secured party has the burden of rebutting the presumption that the value of the collateral at the time of the disposition was at least equivalent to the underlying debt. *In re Bishop,* 482 F.2d 381 (4th Cir. 1973) (interpreting Virginia law); *Leasing Associates, Inc. v. Slaughter & Son, Inc.,* 450 F.2d 174 (8th Cir. 1971) (burden on secured party of proving the actual value of the collateral at time of sale or proving that reasonable notice was sent) (applying Arkansas law); *United States v. Whitehouse Plastics,* 501 F.2d 692 (5th Cir. 1974) (presumption where proper notice not sent).

The question presented in this action involves a significant issue of state law which determines this aspect of the cause now pending and as to which there is no controlling state law precedent. Considering the importance of this issue and the variety of results in other jurisdictions, this Court, in a spirit of comity and in deference to the preeminent competence of the State Court to determine significant and uncertain issues of state law, is required to hold that the Supreme Court of the State of Rhode Island ought to be given the opportunity to resolve this point of law. *See Bellotte v. Zayre Corp.,* 531 F.2d 1100 (1st Cir. 1976); *D'Ambra v. United States,* 518 F.2d 275 (1st Cir. 1975).

All proceedings in this action will be stayed pending Certification to the Rhode Island Supreme Court of the question of a secured party's right to a deficiency judgment where there has not been a commercially reasonable disposition of collateral. R.I.Sup.Ct.R. 6(1). Defendant may prepare a form of Certification Order, agreed upon by both parties, for submission to this Court. The Order shall set forth (1) the question of law to be answered; and (2) a statement of all facts relevant to the question certified and showing fully the nature of the controversy in which the question arose.

Upon receipt of the written opinion of the Supreme Court of the State of Rhode Island, this Court will determine the action now pending in accord with that opinion.