BLACKHAWK PRODUCTION CREDIT ASSOCIATION, Plaintiff and Counterdefendant-Appellee, v. MERIDIAN IMPLEMENT CO., Defendant and Counterplaintiff-Appellant.

Second District   No. 79-25

Opinion filed March 11, 1980.—Rehearing denied April 17, 1980.

Keith S. Armour, of Schultz, Fahy & Street, of Rockford, for appellant.

Paddock, McGreevy & Johnson, of Rockford, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal from a judgment for $11,072.51 entered in favor of the plaintiff, Blackhawk Production Credit Association. Plaintiff's claim was predicated on the alleged wrongful disposition by the defendant, Meridian Implement Company, of certain collateral; plaintiff's motion for summary judgment on the issue of liability was granted and defendant's motion for summary judgment on the same issue was denied. Thereafter, a trial was held on the issue of damages, which resulted in the judgment described above.

On October 14, 1974, Craig Dummer (hereafter debtor) purchased a tractor from defendant; the unpaid balance was secured by a purchase money security interest which was perfected. On April 30, 1975, debtor executed a farm security agreement with plaintiff which granted a subordinate security interest in the same tractor, which interest was also perfected. On July 9, 1976, defendant declared debtor to be in default and repossessed the tractor; thereupon, debtor entered into an agreement with defendant whereby defendant would retain possession of the tractor and another piece of equipment in satisfaction of all obligations of the debtor, which totaled over $20,000.

In the spring of 1977, plaintiff made a demand on defendant that the tractor be sold pursuant to section 9—504 of the Uniform Commercial

Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—504) or that defendant pay plaintiff the difference between the value of the tractor and the unpaid balance secured by defendant's prior security interest therein. At no time prior to this demand did defendant have any actual notice or written notice of plaintiff's subordinate security interest in the tractor. After plaintiff's demand, defendant proceeded to sell the tractor in the ordinary course of its business, although the present lawsuit had been instituted.

The first issue which must be considered is whether the defendant's retention of the collateral in satisfaction of the secured debt, as well as the unsecured debt, was valid under section 9—505(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—505(2)), which provides in relevant part:

"(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral *in satisfaction of the obligation.* Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. In the case of consumer goods no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received (before sending the notice to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. * * * In the absence of such written objection the secured party may retain the collateral *in satisfaction of the debtor's obligation."* (Emphasis added.)

The above language indicates that the secured party may retain the collateral in satisfaction of the debtor's obligation. It should be noted that there is no indication that the debtor, after default, may agree to allow the secured party to keep the collateral in satisfaction of more than the obligation; however, such an action is not expressly prohibited.

The Illinois Code Comment to this section offers some additional guidance. It provides:

"This section establishes a procedure by which a secured party may prepare to retain the collateral *in satisfaction of the secured debt* * * *."* (Emphasis added.) (Ill. Ann. Stat., ch. 26, par. 9—505(2), Ill. Code Comment, at 350 (Smith-Hurd 1974).)

The Code Comment further states:

"This subsection continues, with substantial improvements, a procedure by which the parties may agree, after default, that the secured party retain the collateral *in satisfaction of the obligation secured by it."* (Emphasis added.) Ill. Ann. Stat., ch. 26, par. 9—505(2), Ill. Code Comment, at 351 (Smith-Hurd 1974).

■■ Such language supports the position that the secured party may

retain collateral *only* in discharge of the debt secured thereby. In this light we conclude that the trial court properly construed the language of section 9—505(2), noting also that after default the debtor entered into an agreement with the secured party which is not provided for in the Code, and that the agreement in this cause substantially affects the rights of a subordinate secured party and provides a windfall to the secured party of the surplus in value in excess of the secured debt. Furthermore, it appears that the debtor was the only one who was aware of the existence of both the security agreements when the retention agreement was made. This knowledge placed him in a position of being able to attempt to prefer one creditor over another, and we believe it is manifestly improper for him to be able to do so.

Defendant contends that plaintiff's claim, based upon a subordinate security interest, is barred by its failure to give defendant timely, written notice of its claim as required by section 9—505(2). That section provides that only those creditors who have given timely written notice prior to the proposal for retention are entitled to notice and an opportunity to object. Moreover, the Illinois Code Comment following said section indicates that the revised section 9—505(2) contemplates a shift of the burden of notification, since "[i]n the nature of things the junior secured party is more likely to know of the senior secured party then the reverse." Ill. Ann. Stat., ch. 26, par. 9—505(2), Ill. Code Comment, at 353 (Smith-Hurd 1974).

It is undisputed that when the debtor gave plaintiff a security interest in the collateral, plaintiff was aware that defendant had a prior claim on that collateral. It is further undisputed that plaintiff did not give defendant written notice of its claim to a security interest in the collateral when it obtained that interest, and likewise that defendant had no actual knowledge of plaintiff's claim prior to the submission of the retention proposal to the debtor. No reasonable explanation appears in the record for plaintiff's failure to notify defendant until the spring of 1977, almost two years later.

Defendant asserts that plaintiff, having failed to timely protect its rights under section 9—505(2), is now precluded from raising any objections that it might have had to the retention of the collateral. It is further urged by defendant that the fact that the value of the collateral in excess of the secured debt was set off against the unsecured obligations of the debtor is irrelevant at this time. Plaintiff could have prevented the retention of collateral by a secured party which results in a windfall to that party.

■■ Defendant's arguments are not without merit. It is difficult to comprehend why plaintiff, having knowledge that its security interest was subordinate to defendant's, failed to notify defendant of its interest until approximately two years later. On the other hand, defendant's retention

proposal is not provided for in section 9—505(2). Under these circumstances, we believe that the equities behind the security interest must be balanced. Section 1—103 of the Commercial Code specifically provides that additional principles of law and equity, outside article 9, will be available during the remedial phase as well as the remedies within article 9. (Ill. Rev. Stat. 1977, ch. 26, par. 1—103.) Defendant argues that to now allow the plaintiff to object after defendant has fully settled its claim with the debtor would work an injustice against defendant and leave it without a remedy; this argument is clearly erroneous. While the defendant might be left without recourse as to the unsecured debt, clearly it would be entitled to the amount of the debt due on the tractor. To the contrary, it is plaintiff who would be left without a remedy if not allowed to object. Moreover, defendant is thereby allowed to receive a windfall for engaging in a procedure not specified by the Commercial Code. Under these facts, we conclude that the equities should be balanced in plaintiff's favor.

■■ Plaintiff's failure to comply with the notice requirement likewise presents a problem with respect to its claim for damages under section 9—507(1). That section allows recourse for improper disposition of collateral to those creditors who have protected their rights by making their security interests known to the secured party prior to the proposed disposition. (Ill. Rev. Stat. 1977, ch. 26, par. 9—507(1).) The problem in the instant cause is to determine whether the "improper disposition" referred to above in the statute was the repossession or the subsequent sale. While plaintiff failed to notify the defendant of its security interest before the repossession, it did make its security interest known to defendant prior to the subsequent sale. In view of the equities, we conclude that the improper disposition was the subsequent one which was made after defendant had been notified of plaintiff's security interest. Under this interpretation, plaintiff did satisfy the notice requirements under section 9—507(1).

■■ Finally, plaintiff contends that the trial court erred in determining the amount of damages. We disagree. The record shows that the trial court properly determined the damages under section 9—507(1), since there was an improper disposition of collateral.

The decision of the trial court is accordingly affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.