LOUIS ZAHN DRUG COMPANY, Plaintiff-Appellant, *v.* BANK OF OAK BROOK TERRACE *et al.*, Defendants-Appellees.

Second District    No. 80-438

Opinion filed April 30, 1981.—Rehearing denied May 27, 1981.

Michael K. Fawell, of Fawell, Ward & Pollard, of Lombard, for appellant.

Laurence C. Kozlicki and Joel L. Widman, both of Kozlicki, Widman & Schenk, of Chicago, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

In this appeal we consider whether plaintiff, a junior secured creditor, has stated a cause of action pursuant to sections 9—504(1)(c) or section 9—507(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, pars. 9—504(1)(c) and 9—507(1)) against defendant, a senior secured creditor, and others, to recover damages for the alleged improper disposition of the collateral which secured their respective loans to the debtor.

Plaintiff, Louis Zahn Drug Co., commenced this action in the circuit court of Du Page County in which it filed a five-count complaint against defendant, Bank of Oak Brook Terrace, and others. The case was subsequently removed to the United States District Court for the Northern District of Illinois, which dismissed counts 3 and 4 brought under Federal law, and remanded the remainder of the case to the circuit court of Du Page County. Defendant's motion to dismiss counts 1, 2 and 5 of the complaint was granted by the trial court and plaintiff appeals.

In count 1 plaintiff alleged that prior to June 6, 1977, defendant, Bank of Oak Brook Terrace (Bank) loaned $25,000 to George Meringolo and GJM Enterprises, Inc. (debtor). According to a financing statement filed on June 6, 1977, the loan was secured by a security interest in "inventory, fixtures, equipment now owned or hereafter acquired [by the debtor]." On December 20, 1977, plaintiff loaned $82,282.82 to the debtor and, according to a financing statement filed on January 9, 1978, plaintiff was given a security interest in

> "All fixtures, furnishings, fittings, utensils, tools and equipment, signs, prescription records and files, stock in trade, inventory, pharmaceuticals, drugs, sundry products, lease hold improvements, accounts receivable, proceeds, franchises, contract rights, good will, assignment of store lease, including, but not limited to, all other goods, wares, merchandise furniture, fixtures, equipment, appliances, prescriptions and miscellaneous items, now existing or hereafter acquired by debtor * * *."

The debtor subsequently defaulted on the obligations to both plaintiff and defendant.

After the debtor defaulted, plaintiff attempted to find purchasers for the business and defendants, Harold Schapiro and Donald Warsaw (Buyers), expressed an interest in purchasing it for $70,000. Plaintiff

alleged that prior to October 20, 1978, it entered "into negotiations with the defendant [Bank], with an intent to obtain a settlement of the first lien position of the defendant [Bank] * * * by way of verbal and written communications with said Bank * * *." At about the same time, plaintiff began negotiations with defendant American National Bank & Trust Co., as Trustee (Trustee), which held legal title to the debtor's premises, and its rental agent, defendant Triangle Management Co., in order to assure that the Buyers would be able to obtain a lease of the premises. James Guido was alleged to be the beneficial owner of the premises and also a major shareholder and chairman of the board of the defendant Bank. Plaintiff alleged it also received another offer to purchase the business for $100,000 and then invited the Buyers to reconsider their previous bid. When plaintiff did not hear from them, it resumed its attempts to consummate a sale of the business to the high bidder.

Plaintiff alleges that on October 30, 1978, the bank had, without notice to plaintiff, obtained a renunciation of rights in the collateral from the debtor and sold the entire inventory, assets, fixtures and equipment of the debtor's business for $70,000 to others. The complaint asserts that the sale was commercially unreasonable "in that, among other things, a higher price could have been obtained" and that the Bank, the Buyers, and Triangle Management Co. "did enter into a conspiracy" to defraud plaintiff. Plaintiff further alleged that the Bank had failed to exercise good faith in its dealings with plaintiff concerning the sale, in failing to give notice of it, and in failing to disclose the relationship between the Bank, the beneficiaries of the trust under which title to the premises was held, and Triangle Management Co. Plaintiff also alleged that although the Bank had received payment in full for its loan, it had refused to account for the balance of the funds received or to pay over any excess amount to the plaintiff. Plaintiff prayed that the sale be held commercially unreasonable and that damages be awarded pursuant to section 9—507(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—507(1)).

In count II of its complaint, plaintiff alleged that defendants Triangle Management Co., the Trustee, the Buyers, and Terrace Drugs, Inc. "did conspire, one with the other, to deprive the plaintiffs of funds rightfully theirs" and sought damages in the sum of $75,000.

In the fifth and remaining count of its complaint, plaintiff averred that the Bank failed to account to it for the proceeds of the sale and that the "actions of the [Bank] have been fraudulent and have unjustly enriched said bank." Plaintiff requested that the Bank be required to account to it as to the disposal of the funds and to refund to plaintiff any sums which exceed the amount then due and owing to the Bank.

Section 9—504(1) of the Uniform Commercial Code describes a

secured party's right to dispose of collateral after default and provides that the proceeds of the disposition shall be applied first (a) to the expenses incurred, then (b) to satisfaction of the principal indebtedness secured, and then (c) to

> "* * * the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. * * *" (Ill. Rev. Stat. 1979, ch. 26, par. 9—504(1)(c).)

With certain exceptions not pertinent here

> "* * * notification shall be sent to any other secured party from whom the secured party [who is making the disposition] has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. * * *" (Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3).)

Section 9—504(3) further provides that the "[s]ale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." The Code also provides a remedy if a secured party fails to proceed in accordance with its provisions in the disposition of collateral:

> "If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or *any person* entitled to notification or *whose security interest has been made known to the secured party prior to the disposition* has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. * * *" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 26, par. 9—507(1).)

Thus, in seeking to impose liability upon a secured party under the remedies provided by section 9—507, plaintiff must allege facts showing it is "a person entitled to notification" or that its security interest was "made known" to defendant prior to disposition of the collateral.

The essential question presented by defendant's motion to dismiss the complaint in the trial court and by the arguments of the parties on appeal is whether plaintiff, as a secondary secured party, must allege it gave notice *in writing* to defendant in order to proceed under section 9—507, or whether allegations that plaintiff's security interest was otherwise "made known" to defendant before disposition are sufficient.

Plaintiff relies upon the allegations in the complaint that plaintiff and defendant Bank had negotiated in an attempt to settle the Bank's first lien

against the collateral and did so by both written and verbal communications. It contends that by these means plaintiff's security interest was made known to defendant prior to sale of the collateral giving plaintiff standing to now assert the sale was commercially unreasonable and to seek damages pursuant to section 9—507. Defendant contends, however, that a secondary secured party such as plaintiff may not complain about any aspect of the sale of the collateral unless it has given written notice of its claim or interest before sale and plaintiff's complaint failed to allege it did so.

■■ Prior to the 1972 amendments of article 9 of the Uniform Commercial Code, a secured party wishing to dispose of collateral was under a duty to give notice to any person who had a security interest in the collateral who had filed a financing statement with the Secretary of State. (Ill. Ann. Stat., ch. 26, par. 9—504, Illinois Code Comment, at 341 (Smith-Hurd 1974); Ill. Rev. Stat. 1971, ch. 26, par. 9—401(1)(c).) He was also required to give notice to any other person known to him to have a security interest in the collateral. (Ill. Ann. Stat., ch. 26, par. 9—504, Illinois Code Comment, at 341 (Smith-Hurd 1974).) Under the 1972 amendments the notice requirements were eased to the extent that a selling secured party need not notify other secured parties of a proposed disposition of collateral unless such parties had first given him written notice of a claim of interest in the collateral. (Ill. Rev. Stat. 1979, ch. 26, par. 9—504(3); Ill. Ann. Stat., ch. 26, par. 9—504, Illinois Code Comment, at 341 (Smith-Hurd 1974).) It necessarily follows that a subordinate secured party who has failed to give the requisite written notice of his claim cannot be heard to complain if he is not notified in advance of the disposition of the collateral and may not seek satisfaction of his indebtedness from the proceeds of the disposition pursuant to section 9—504(1)(c). See *Kolton v. K & L Furniture & Appliances, Inc.* (1979), 82 Ill. App. 3d 868, 875, 403 N.E.2d 478, 484.

It does not necessarily follow, however, that the failure of a subordinate secured party to give written notice of a claim of interest in the collateral forecloses him from contesting the commercial reasonableness of the sale and seeking damages if proven. While the amendments to section 9—504(3) eased the notice requirements of the selling secured party, the provisions of section 9—507(1) giving a secured party whose security interest has been "made known" to the selling secured party an action for damages was not affected by the amendments. We note that the commentators to section 9—507 have reasoned that its language "whose security interest has been made known" to the other secured party may be read to mean "made known in writing," but that is not what it says. (Ill. Ann. Stat., ch. 26, par. 9—507, Illinois Code Comment, at 359 (Smith-Hurd 1974).) Had the legislature intended that an action for

damages was to be limited to subordinate secured parties whose interest had been made known to the selling secured party "in writing," as it did so limit their rights under section 9—504(1)(c), it could easily have done so. The legislature clearly chose, however, to retain the existing remedy in favor of other secured parties whose interest was made known to the selling party prior to disposition of the collateral. Those subordinate secured parties who have given written notice of their claim against the collateral are entitled to receive notice of its proposed disposition and also to satisfaction of their claim from any surplus in the proceeds. The remedy sought by plaintiff arises after disposition and is granted to the debtor, any person entitled to notification (being those who have given written notice of their claim), or (any person) whose security interest has been made known to the selling party. If, as urged by defendant, the remedy extends only to those secured parties in the third category who have given notice in writing, it would be redundant as such parties are already included within the second category.

One of the purposes of the Code requirement that a sale of collateral be conducted in a commercially reasonable manner is to protect the interests of other secured parties. The selling party is not required to search out and give notice of an intended disposition to all other secured parties, but as to those from whom it had received written notice of their claim of an interest in the collateral prior to the time distribution of the proceeds has been completed, the holder of the subordinate security interest would be entitled to seek satisfaction of its indebtedness from any surplus remaining of the proceeds of sale after payment or expenses and the primary indebtedness.

In the event the subordinate secured party has not given the notice required by section 9—504(3), then he would not be entitled to receive the notice provided by that section from the principal secured party. As we have noted, however, the subordinate secured party is not without remedy, as section 9—507(1) provides that any person whose security interest has been made known to the secured party prior to disposition of the collateral may recover for losses caused by a failure to comply with the Act.

Under somewhat analogous circumstances, this court in *Blackhawk Production Credit Association v. Meridian Implement Co.* (1980), 82 Ill. App. 3d 93, 402 N.E.2d 277, considered the rights of a secured party holding a subordinate security interest where the party with the superior security interest retained the collateral in full satisfaction of the debtor's obligation to it. Under section 9—505(2) (Ill. Rev. Stat. 1979, ch. 26, par. 9—505(2)) if a secured party retains the collateral in satisfaction of its obligation, it is required to send notice to any other secured party from

whom it has received written notice of a claim of an interest in the collateral, and if another secured party objects in writing within 21 days thereafter, the collateral must be disposed of under section 9—504. In *Blackhawk* we held that a secured party was not authorized by section 9—505 to retain collateral in satisfaction of unsecured as well as secured debts and, therefore, the failure of the holder of a subordinate security interest to serve written notice on the senior secured party prior to the repossession of the collateral did not preclude his recovery since his security interest was *made known* to the senior secured party before the subsequent sale of the collateral. The wrongful disposition of the collateral in that case which gave rise to a claim under section 9—507(1) was the sale of the collateral after the primary secured party had received notification of the interest of the junior secured party.

Similarly, it has been said that mere knowledge by the selling secured party of the interest of another secured party in the collateral is sufficient to subject him to liability under section 9—507(1), if he fails to dispose of the collateral in a commercially reasonable manner. See *Liberty National Bank & Trust Co. v. Acme Tool Division of the Rucker Co.* (10th Cir. 1976), 540 F.2d 1375, 1382.

■■ We conclude that a subordinate secured party's security interest in the collateral need not be made known in writing to the selling secured party in order to challenge a disposition under section 9—507 on the grounds it was commercially unreasonable where the interest was otherwise made known to the secured party prior to disposition.

■■ While plaintiff does not and need not allege that its security interest was made known to the Bank in writing in order to maintain an action under section 9—507, its complaint must set forth facts which if proven show that the selling secured party had been informed of plaintiff's interest prior to the disposition of the collateral. It may not be inferred from plaintiff's allegation that it negotiated with the Bank seeking to settle the Bank's first lien that the Bank became aware of plaintiff's junior secured status. A complaint will not withstand a motion to dismiss under section 45 of the Civil Practice Act unless it at least minimally alleges facts setting forth the essential elements of a cause of action (*Kolton v. K & L Furniture & Appliances, Inc.* (1980), 82 Ill. App. 3d 868, 403 N.E.2d 478), and it fails to do so in count I.

■■ In count I plaintiff also alleged that the sale was commercially unreasonable "in that * * * a higher price could have been obtained." Section 9—507(2) of the Uniform Commercial Code provides, however, that the fact a better price could have been obtained is in itself insufficient to establish the sale was not made in a commercially reasonable manner. (Ill. Rev. Stat. 1979, ch. 26, par. 9—507(2).) In the absence of fraud or

mistaken or illegal practice mere inadequacy of price will not invalidate the sale. (*Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964; *In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 303 N.E.2d 541.) Although plaintiff did generally allege defendants acted fraudulently, it failed to state facts in count I from which that conclusion could fairly be drawn.

■■ With respect to count II, plaintiff repeated the allegations of count I and further alleged that all of the defendants except the Bank "did conspire one with the other, to deprive plaintiff of funds rightfully theirs." As in count I, we find that these allegations are too indefinite to state a cause of action. Plaintiff has stated no facts which show how the alleged conspiracy might have been created or that any act was taken in furtherance of it. The conclusion that a conspiracy to defraud occurred unsupported by other factual allegations in the complaint is clearly insufficient to sustain count II. *Panorama of Homes, Inc. v. Catholic Foreign Missions Society, Inc.* (1980), 84 Ill. App. 3d 142, 404 N.E.2d 1104; see *Washington v. Courtesy Motor Sales, Inc.* (1964), 48 Ill. App. 2d 380, 199 N.E.2d 263.

■■ In count V of its complaint, plaintiff sought an accounting for the proceeds of the sale on the grounds that the actions of the Bank were "fraudulent and have unjustly enriched" the Bank. Plaintiff failed, however, to allege that it served written notice of a demand that its indebtedness be satisfied from the proceeds of the sale of the collateral, as is required by section 9—504(1)(c). The Bank therefore was under no obligation to account for the proceeds to plaintiff. (See *Kolton v. K & L Furniture & Appliances, Inc.* (1979), 82 Ill. App. 3d 868, 403 N.E.2d 478.) Moreover, since fraud must be pleaded with specificity (*Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1978), 65 Ill. App. 3d 907, 382 N.E.2d 1250; *Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre Co.* (1977), 52 Ill. App. 3d 122, 367 N.E.2d 247), plaintiff's general allegation that defendant's conduct was fraudulent does state a claim for relief.

■■ The trial court dismissed the complaint finding it lacked necessary allegations that plaintiff had given written notice to the Bank of its claim of an interest in the collateral. As we have determined written notice is not required to preserve a remedy pursuant to section 9—507(1), the court erred in dismissing counts I and V on that ground. Defendants did not attack the sufficiency of the allegations of these counts under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45), however, and will be given an opportunity to do so on remand. A complaint should not be dismissed unless it clearly appears that no set of facts can be proved which will justify a recovery (*Fitzgerald v. Chicago Title & Trust Co.*

(1978), 72 Ill. 2d 179, 380 N.E.2d 790; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259), and plaintiff may wish to amend its complaint in an effort to supply the deficiencies we have discussed.

For these reasons the judgment of the trial court will be reversed and the cause remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

SEIDENFELD, P. J., and REINHARD, J., concur.